**In the Matter of Joan SPIVEY, Debtor.**

No. 198–20261–575.

United States Bankruptcy Court, E.D. New York.

March 5, 1999.

the Court by Sears would be null and void unless the debtor filed a motion for approval of the agreement within a specified time period. The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. sections 1334(b) and 157(b) and the August 28, 1986, general Order of reference of the United States District Court for the Eastern District of New York. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(O) because it involves a substantive right created by the Bankruptcy Code [1] and the adjustment of the debtor-creditor relationship. *See In re Lopez*, 224 B.R. 439, 440–41 (Bankr. C.D.Cal.1998); *McCrory Corp. v. 99 Cent Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 506 (S.D.N.Y.1993) (quotations omitted).

## BACKGROUND

Debtor filed her Chapter 7 petition on July 23, 1998, and was represented by counsel in connection with the case. She scheduled no secured creditors and valued her household goods, which she did not itemize and for which she claimed a collective exemption, at $750. She scheduled Sears as an unsecured creditor that was owed approximately $439. The first meeting of creditors was scheduled for August 31, 1998; the trustee closed the meeting on that date. The deadline to object to claimed exemptions expired 30 days thereafter, on September 30, 1998.

On September 2, 1998, Sears filed with this Court a document captioned "Redemption Agreement", and dated August 31, 1998 (the "Agreement"), which purported to document Debtor's voluntary undertaking to redeem, pursuant to section 722 of the Code, a television/VCR from Sears' lien in return for the payment of $153.89. The Agreement recited that Debtor elects to "exercise [her] right under Section 722 of the [B]ankruptcy [C]ode to redeem the personal property listed below that was purchased with [her] Sears Account # [sic] and is subject to a lien held by Sears." The Agreement further recited that the property sought to be redeemed is "either exempted under Section 522 of the Bankruptcy Code or was abandoned under Section 554 of the Bankruptcy Code," and required Debt-

Dykema Gossett, by Ronald L. Rose, William L. Huebner, Bloomfield Hills, Michigan, for Sears Roebuck & Co.

Jean K. Fitzsimon, Assistant General Counsel, Sears, Roebuck and Co., Hoffman Estates, IL.

## OPINION AND ORDER ON MOTION FOR RECONSIDERATION

LAURA TAYLOR SWAIN, Bankruptcy Judge.

Sears, Roebuck and Co. ("Sears") moves for reconsideration of an Order of this Court, dated October 15, 1998, which provided that a certain Redemption Agreement filed with

1. 11 U.S.C. § 101 *et seq.* (the "Code").

or to make the payment by September 30, 1998.

The Agreement was not accompanied by any request for judicial review or approval and purported to be self-executing. The Clerk of Court brought the filing to the Court's attention and, on October 15, 1998, the Court issued *sua sponte* an order providing as follows:

A Memorandum of Redemption has been filed by [Sears] in the above captioned case. Section 722 of the Bankruptcy Code and Rule 6008 of the Federal Rules of Bankruptcy Procedure provide that property that is the subject of a security interest may be redeemed under certain circumstances if authorized by the Court upon motion by the debtor or the trustee. It is hereby . . .

ORDERED, that if the debtor wishes the redemption to be approved, a motion for approval must be filed with the Court and served on Sears within 20 days from the date hereof, returnable November 19, 1998 at 2:00 p.m. In the absence of such a motion, the Memorandum of Redemption will be null and void and Sears shall refund to the debtor all monies paid pursuant thereto, certifying such refund to the Court within 20 days after the motion filing deadline set forth above.

The debtor did not move for approval of the Agreement. Sears, arguing that the Code does not require judicial approval of voluntary redemption agreements, seeks reconsideration of the October 15, 1998, Order and blanket validation of redemption agreements that Sears files pursuant to the procedures outlined below. The Court accepts as true Sears' representations as to the details of its process for purposes of determination of the instant matter.

Sears' redemption practices are described in the affidavit of Debbie DeGrenier, the Recovery Manager of the Sears Boston Regional Credit Card Operations Center (the "RCCOC"), which was filed by Sears in support of its motion for reconsideration. According to Ms. DeGrenier, when Sears is notified of a Chapter 7 petition, Sears first determines whether it has a valid purchase money security interest ("PMSI"). In making this determination, Sears ascertains that it has "a sales ticket which is clearly signed by the account holder or an authorized user." DeGrenier's affidavit asserts, further, that "Sears only claims a [PMSI] in personal goods that Sears considers hard-line merchandise, e.g., washers, dryers, refrigerators, etc. Sears does not claim a [PMSI] in fixtures[;] Sears does not claim its security interest in items with a replacement value of less than $25[; and] Sears waives its [PMSI] in certain items, for example, medically necessary items." In a letter from its counsel dated December 1, 1998, Sears clarified its procedure with respect to debtors who are New York residents. Counsel represented that, consistent with section 413(12)(c) of the New York Personal Property Law, which restricts the extent to which creditors may obtain PMSIs through retail charge account transactions, Sears does not claim liens on merchandise whose original purchase price was less than $200.

The DeGrenier affidavit further explains that Sears uses valuation tables to determine the replacement value of merchandise in which it claims a PMSI.[2] Once the replacement value is determined, the information is communicated to the Sears representative who will attend the section 341 meeting of creditors. At the section 341 meeting, the Sears representative informs the debtor of Sears' position as to the replacement value of the merchandise, and asks the debtor whether she wishes to redeem the property for that price, reaffirm the obligation, or surrender the merchandise. Counsel asserted at argument that Sears does not threaten repossession to coerce debtors to enter into redemption or reaffirmation agreements.

If the debtor wishes to redeem the property and agrees to Sears' calculation of the replacement value, the Sears representative and the debtor complete a form agreement

---

**2.** At a September 15, 1998 hearing on a similar order to show cause in another case, Sears proffered that the valuation tables are prepared by Deloitte and Touche and the values set forth in the tables are intended to constitute replacement value determined in accordance with *Associates Commercial Corp. v. Rash*, —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

provided by the Sears representative. The case caption, description of merchandise, agreed replacement value, total dollar amount of all redemptions, and a provision for payment of the merchandise value in a lump sum within 30 days are inserted. After the redemption agreement form is completed, the debtor (and, if the debtor is represented by counsel, debtor's attorney) signs and dates the agreement. The Sears representative then signs.

Sears files the redemption agreement with the Clerk's Office of the court in which the debtor's case is pending, unless the particular Clerk's Office will not allow such a filing. If a motion to approve the redemption agreement is required by the relevant court, the Sears representative so informs the debtor or her counsel. Once a file stamped copy of the redemption agreement is returned, it is forwarded to the RCCOC. Sears mails a copy to the debtor (or, if the debtor is represented by counsel, debtor's attorney). Sears represents that it will accept the debtor's payment only after the redemption agreement is signed and filed.

If the debtor wishes to redeem the property but does not agree to the redemption value proposed by Sears, Sears will present evidence of its asserted value in the event the debtor files a motion to redeem in accordance with Federal Rule of Bankruptcy Procedure 6008.

If the debtor does not execute a redemption agreement at the section 341 meeting, Sears will contact the debtor (or, if the debtor is represented by counsel, debtor's attorney) and determine whether the debtor wishes to redeem, reaffirm, or surrender the merchandise. If Sears and the debtor subsequently agree on the replacement value, Sears completes the redemption form and sends it to the debtor for signature. After Sears receives the redemption agreement signed by the debtor (and, if the debtor is represented by counsel, by debtor's attorney) and determines that no alterations have been made, the redemption agreement is filed with the bankruptcy court.

The Redemption Agreement in the instant case is dated August 31, 1998, and thus presumably was completed at the section 341 meeting of creditors that took place on that same date.

Forty-five days after the redemption agreement is signed. Sears reviews the debtor's account. If payment has been made, the redemption is considered complete and the account is closed with respect to that merchandise. Sears has proffered no information as to the course of action it takes if payment is not received.

At a September 15, 1998 hearing on a similar order to show cause in another case, Sears' representatives asserted, to the Court's surprise and dismay, that it has long been a widespread general practice of consumer retail creditors to solicit and accept payments under "voluntary" redemption agreements without seeking judicial approval of the solicitations or even notifying the court of the agreements. Sears changed its practices to include court filing of the redemption agreements only after its recent legal difficulties with respect to unfiled reaffirmation agreements. *See generally In re Melendez,* 224 B.R. 252, 262–263 (Bankr.D.Mass.1998) (chronicling Sears' reaffirmation agreement litigation); John McCormick, *The Sorry Side of Sears,* Newsweek, February 22, 1999, at 36; Joseph Cahill, *Sears Agrees to Plead Guilty to Charges Of Criminal Fraud in Credit–Card Case,* Wall Street Journal, February 10, 1999, at B13. Sears continues, however, to accept payments under redemption agreements without court approval. Sears contends that its redemption practice comports with the Congressional intent underlying the redemption provision of the Code. By filing redemption agreements, Sears asserts, it merely informs courts of the redemptions. Sears contends that neither the filing of redemption agreements nor judicial approval of the same is required.

██ The Court rejects Sears' arguments and holds, for the reasons set forth below, that neither the Code nor the Federal Rules of Bankruptcy Procedure authorizes the performance of redemption agreements absent judicial approval. The Court's order confirming the null and void status of Sears' agreement with the Debtor in this case will, accordingly, stand. Collection of outstanding

debts pursuant to such unapproved agreements may well violate the automatic stay and the discharge injunction, but the Court need not reach that further issue today.

## DISCUSSION

According to Sears, Rule 6008 of the Federal Rules of Bankruptcy Procedure ("Redemption of Property From Lien or Sale") applies only where there is a dispute between the debtor and the secured party as to the value of the collateral. Thus, Sears contends, the filing of a redemption agreement should not trigger any judicial action. Indeed, Sears argues that requiring the filing of a motion pursuant to Rule 6008 would interfere with the legislative intent of the redemption provision of the Code and exceed the authority of the judicial branch of the federal government.

One published decision has addressed squarely the issue of whether a debtor must make a motion seeking approval of a voluntary redemption agreement. In *In re Lopez,* 224 B.R. 439 (Bankr.C.D.Cal.1998). Judge Robles set forth several reasons why such a motion is required. First, a debtor may only redeem property that is exempt or that has been abandoned. 11 U.S.C. § 722. The agreement in *Lopez,* like that signed by Debtor here, recited that the property sought to be redeemed is either exempt or abandoned. In *Lopez,* the time to object to exemptions had not yet run, and the trustee had not taken any action to abandon the property by the time the agreement was executed.[3] A debtor must affirmatively schedule an exemption to preserve it, and is permitted to amend his or her schedules at any time; an amendment to Schedule C (exemptions) triggers a new 30 day objection period. *See* Fed.R.Bankr.P. 4003. Judicial review is thus necessary to determine whether the property has been properly exempted or abandoned. *Lopez,* 224 B.R. at 443.

■ Second, section 722 provides that a debtor may redeem property by paying the lienor the amount of the allowed secured claim. The amount of such claim, as defined by section 506(a), is the value of the collateral. An agreement reached by the parties as to the value of collateral may meet with court approval, but bankruptcy courts are not bound by valuations developed by the parties. *See Lopez,* 224 B.R. at 443. The *Lopez* court was particularly concerned about debtors signing redemption agreements that contradict property values set forth in their schedules, which are signed under penalty of perjury. *Id.* The Debtor here did not even identify specifically in her schedules the TV/VCR she later agreed to redeem, and she asserted in her schedules that all of her household goods and furnishings other than clothing, including furniture, audio, video, and computer equipment, were worth only $750 in total at the time of filing. The schedules listed the Sears debt as unsecured.

■ Third, the *Lopez* court disagreed with Sears' contention that Rule 6008 motions are necessary only when there is a dispute. Rule 6008 is discretionary—"the court may authorize" the redemption. The Rule clearly gives the court power to refuse authorization of a redemption; nothing in the Rule limits that authority to situations in which the parties failed to agree on the value of the property. *See id.* at 444. The *Lopez* court rejected the position set forth in 10 *Collier on Bankruptcy* ¶ 6008.3 n. 3 ("Rule 6008 is written in the subjunctive and thus merely provides that if a motion for redemption is filed, the court has the discretion to authorize it") and concluded that a motion pursuant to Rule 6008 is required for a valid redemption. *Id.* at 443–44. Interestingly, the *Collier's* language supportive of Sears' position appears to have been added in the March 1998 revision. Prior to the revision, the discussion of Rule 6008 counseled simply: "Redemption under section 722 (by the chapter 7 debtor) is governed by Rules 6008 and 9014. Rule 6008 requires a motion followed by notice and [a] hearing." 10 *Collier on Bankruptcy* ¶ 6008.01 (15th Edition, Revised ¹²⁄₉₆) (footnotes omit-

---

**3.** That situation is present here as well. The Agreement was executed on August 31, 1998 and filed with the Court on September 2, 1998; the deadline to object to exemptions expired on September 30, 1998. Nothing on the docket indicates that the property in the instant case was ever affirmatively abandoned by the trustee.

ted). *Collier*'s cites no authority for the revised interpretation.

This Court concurs in Judge Robles' conclusion that a motion must be made and the redemption—whether the parties are in agreement or not—approved by the court. The Code's inclusion of several defined terms—each connoting a legal status and some with their own procedural predicates—in section 722 both provides protections against abuse and reinforces the notion, more fully developed in Rule 6008, that Congress contemplated judicial oversight of the redemption process. Under section 722, a debtor can only redeem tangible personal property intended primarily for personal, family or household use that is subject to a valid lien that itself secures a consumer debt that is dischargeable, if the property is exempted under section 522 or has been abandoned under section 554. The redemption is ultimately to be accomplished by paying the holder of the lien the value of the allowed secured claim of the holder that is secured by the lien.

Thus, only certain types of property are subject to the right of redemption in the first place. If no motion and service of the purported agreement are required, there is nothing to stop unscrupulous or uninformed parties from entering into agreements purporting to redeem property that is not eligible for such treatment under section 722. Section 722 further presumes the existence of a valid lien. Under Sears' reading of the statute, a creditor effectively determines unilaterally the validity of its lien; the case trustee is not given the opportunity to assert the rights of the estate in the property, and the court has no opportunity to require proof of the interest claimed. Section 722 requires that the property be either exempt or abandoned; Sears' reading does nothing to ensure that this requirement is met and, indeed, it is clear that by soliciting redemption agreements at the section 341 meetings Sears all but ensures that this requirement

will not have been met by the time it asks the debtor to execute the agreement.

Moreover, the valuation benchmark under section 722 is an "allowed" secured claim. Under section 502 of the Code, a pre-petition claim in a chapter 7 case cannot be "allowed" unless a proof of claim has first been filed with the court; Sears' description of its redemption agreement solicitation procedures does not include compliance with this aspect of the statute and again fails to put the trustee and other creditors on notice of its claim of a security interest in its purported collateral. Finally, section 506(a) contemplates a judicial determination of the amount of a secured claim in connection with a debtor's retention of collateral.

Rule 6008, adopted pursuant to the power granted to the Supreme Court by 28 U.S.C. section 2075 to prescribe practice and procedure in cases under the Code, establishes an appropriate procedural context for resolution of the many legal issues implicated by a redemption pursuant to section 722 of the Code.[4]

Sears argues that, because section 524(c) (relating to reaffirmation agreements) and section 722 (relating to redemptions) address different public policy concerns, the failure of Congress' to make explicit provision in the redemption statute for judicial approval indicates that no such approval of a "voluntary" redemption is required. The Court disagrees. Both the reaffirmation provisions of section 524(c) and the redemption provisions of section 722 are Congressional responses to creditor abuse in the reaffirmation context. The legislative history of the Code reviews the creditor abuses associated with reaffirmations that led to changes in the reaffirmation procedure. In establishing substantive and procedural restrictions on reaffirmation agreements. Congress was concerned that unsuspecting debtors were being led into binding reaffirmations and thereby undoing the beneficial effects of the discharge: "To the extent that reaffirmations are enforce-

---

4. Prior to the enactment of section 722 and the adoption of Rule 6008, former Bankruptcy Rule 609 provided a procedure—requiring an application to the Court—for a trustee's exercise of state law redemption rights. *See* former Bankruptcy

Rule 609 ("On application by the trustee and after hearing on such notice as the court may direct, the court may authorize the redemption ... in accordance with applicable law.").

able, the fresh start goal of the bankruptcy laws is impaired." H.R.Rep. No. 95–595, at 163 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, at 6124. One reason for reaffirmations was the threat of repossession. The debtor might reaffirm a debt, even where the market value was far below the amount of the debt, because the replacement cost was high. *See id.* Creditors with security interests in consumer goods could use the threat of foreclosure to obtain reaffirmations, even under circumstances in which the collateral had little resale value, if the goods would be difficult for the debtor to replace. *See id.* at 127.

In Section 722, Congress gave individual debtors a redemption right that did not exist under the Bankruptcy Act of 1898. *See* S.Rep. No. 95–989, at 95 (1978), U.S.Code Cong. & Admin.News 1978, at p. 5881 (the section 722 right of redemption is "a very substantial change from current law"). Because the amount to be paid in connection with a redemption is determined by reference to the value of household goods in which a creditor claims a security interest, redemptions are equally subject to the types of abuses identified by Congress in establishing reaffirmation procedures. Redemption permits a debtor to retain, by paying the value of the collateral, personal property that is potentially of great value to the debtor, but of insignificant value to anyone else.[5]

Redemption agreements do not impose personal liability in the legal sense; here, the Agreement expressly provides that Sears' recourse in the event of Debtor's default thereunder is limited to its rights against the collateral. That an independent payment obligation is not created, however, does not mean that the redemption provision cannot be abused. Retention of collateral pursuant to a redemption agreement generally requires the immediate payment of funds that do not constitute property of the estate. An unscrupulous creditor could, by asserting that it has a valid security interest and

threatening a debtor with repossession, obtain a redemption payment to which it is not entitled. Or, a creditor with a valid security interest could propose to an uninformed debtor a redemption price much higher than the actual value of the collateral. These concerns are most acute where the debtor is *pro se* and the creditor unilaterally determines the redemption price, and do not disappear simply because a debtor's counsel may be present at the time a redemption agreement is solicited. The right to foreclose on collateral that is essentially unmarketable but has a high potential replacement cost gives creditors substantial leverage that can be abused in the redemption context. Sears concedes that, if the redemption price were to be paid over time, a reaffirmation agreement would be required and the protections of section 524(c) triggered. The debtor's fresh start is no less impaired when she pays a lump sum out of non-estate property than when she makes a number of smaller payments over an extended period of time out of non-estate property.

■ Sears further contends that this Court lacks jurisdiction over a "voluntary" redemption because there is no "case or controversy." Bankruptcy courts have jurisdiction to ensure compliance with the Code during the administration of a case. *See* 11 U.S.C. § 105. The Court may, *sua sponte,* raise certain issues. *Id.* Thus, where the statute establishes certain predicates to an action and their existence has not yet been established, the consent of all parties does not vitiate the court's power to ensure compliance with statutory requirements. The Court also has power to prevent a creditor from abusing the bankruptcy process. *Id.* Thus, there is no jurisdictional infirmity to the requirement that redemptions be brought on by motion.[6]

Finally, Sears argues that, as a practical matter, requiring debtors to file motions to redeem will likely discourage redemptions.

---

5. The Court expresses no opinion as to the propriety of using the *Rash* replacement value as the redemption price in light of the legislative history of section 722. *See, e.g., In re Williams,* 224 B.R. 873 (Bankr.S.D.Ohio 1998).

6. Indeed, Sears' jurisdictional argument, taken to its logical extension, would hold that the federal courts lack jurisdiction to review voluntary reaffirmation agreements. Not even Sears takes this position.

According to Sears, creditors prefer reaffirmations to redemptions because they often are able to collect interest on unpaid reaffirmed amounts. Sears also complains that individual debtors are unlikely to file motions to redeem property.[7] Neither prospect persuades this Court that it would be appropriate to sanction flouting of the procedural requirement established by Rule 6008 or to nullify—by closing judicial eyes to them—the substantive predicates to redemption established by section 722.

The Court is not convinced that enforcement of the motion requirement established by the Rules would impose so great a burden as to send creditors fleeing to reaffirmations. Creditors may well continue to solicit redemption agreements when they believe that it is not economical to repossess the collateral,[8] and may prefer immediate payment to the risk of future default inherent in a reaffirmation agreement. The Court also notes that reaffirmations require an affirmative determination by an attorney that such agreement does not impose an undue hardship on the debtor or, if the debtor is *pro se*, a determination by the court that the reaffirmation is in the debtor's best interest. *See* 11 U.S.C. § 524(c)(3) and (6). Moreover, nothing would prevent a creditor from establishing redemption agreement procedures that streamline the process and ensure that the appropriate motion is made. A creditor could provide, *inter alia*, appropriate documentation of the claimed security interest and basis of the valuation as part of the redemption agreement "package" proffered to debtors and could also provide in the redemption agreement that the creditor is authorized to file and serve a joint motion seeking its approval. In this District, such motions may be made by "notice of presentment," a procedure that requires a hearing only if a written objection is filed or the court specifically orders a hearing.[9] Sears appears to have modified its reaffirmation procedures for *pro se* debtors to include solicitation of permission to file a motion for approval of the reaffirmation agreement on the debtor's behalf.[10]

## CONCLUSION

Rule 6008 of the Federal Rules of Bankruptcy Procedure requires that the debtor file a motion in order to effectuate a redemption. No such motion was filed in the instant case. After reconsideration of this matter, the Court declines to rescind or modify its October 15, 1998, Order.

The Court notes that the record in this case shows no indication that Sears has refunded monies paid to it by the Debtor under the Agreement. The October 15, 1998, Order required Sears to file a written certification of such refund by November 25, 1998.

SO ORDERED.

7. The Court takes judicial notice of a reaffirmation agreement recently filed by Sears in another case, accompanied by a paper purportedly signed by the *pro se* debtor and apparently prepared by Sears, requesting approval of the reaffirmation agreement. The application asserts that "Sears has a valid security interest" in certain collateral, and Sears' lien "is not avoidable under 11 U.S.C. [§ ] 522(f) or for any other reason."

8. For example, the replacement value Sears uses, based on purchase price and depreciation, appears to exclude repossession, reconditioning and selling costs that would be incurred if Sears were to foreclose on its security interest and sell the collateral. Absent a New York debtor's contemporaneous written consent to repossession, a creditor with a PMSI arising under a retail installment credit agreement cannot avail itself of the self-help remedies of U.C.C. section 9–503 and invoke the judicial process to foreclose on a security interest. *See* N.Y. Personal Property Law § 413(12)(c).

9. See E.D.N.Y.L.B.R.2002–1.

10. *See* n.8, *supra.*