In re Edward G. WHITE & Carol L. White, Debtors.

Bankruptcy No. 98–11168.

United States Bankruptcy Court, D. Vermont.

March 17, 1999.

R. Obuchowski, Obuchowski Law Offices, Bethel, Vt., for Edward G. White & Carol L. White ("Debtors").

G.C. Rees, Burlington, Vt. and R.L. Rose, Dykema Gossett, Bloomfield Hills, Mich., for Sears Roebuck & Co. ("Sears").

## MEMORANDUM OF DECISION ON SEARS' REQUEST TO MODIFY GENERAL ORDER NO. 98–01

FRANCIS G. CONRAD, Bankruptcy Judge.

Sears asks us[1] to rescind or modify our General Order 98–01, which demands that

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A) and (O). This Memoran-

redemption agreements and relevant paperwork be filed with and approved by us. We Deny the Motion.[2]

### FACTUAL HISTORY

In order to more fully evaluate an increasing number [3] of redemptions filed by Sears [4] and other creditors, we recently entered General Order No. 98–01.[5] The Order demands any redemptions, consensual or otherwise, which are entered into by debtors in this jurisdiction, be filed with the Court. Each redemption agreement must contain specific information to enable us to make an informed ruling on it.

Debtors filed a voluntary Chapter 7 petition on August 4, 1998. On November 17, 1998, Sears filed a document titled 'memorandum of redemption' in which Debtors acknowledged an intent to pay $624.17 to re-

dum of Decision constitutes conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bankr.P. 7052.

2. This matter is before us on Sears' Motion to Reconsider General Order No. 98–01.

3. In the five years spanning 1992 through 1996, a total of eleven motions for redemption were filed with this Court. None involved Sears. In 1997 there were six instances in which debtors sought to redeem property; Sears was involved in three of those cases. In 1998, there were seventeen instances where debtors sought to redeem property; twelve involved Sears. This appears to be a bi-coastal issue. *See In re Lopez*, 224 B.R. 439 (Bankr.C.D.Cal.1998); *In re Spivey*, 230 B.R. 484 (Bankr.S.D.N.Y.1999). (Both decisions address Sears redemption procedures.)

When asked by us about the increasing number of 'memoranda of redemptions' filed by Sears, counsel responded that the increase was due to its own internal policy of disclosure, rather than any mandate from the Bankruptcy Code:

Mr. Rose: Before we filed memorandum of redemption—memoranda of redemptions, I—I don't believe that it was something that came before this Court. When—When it—As Your Honor [is] aware, in April of 1997, Sears got into major trouble with its reaffirmation program. And as a part of that effort, Sears was required by an order of Judge Kenner to retain Professor King, which Sears consented to, to assist Sears and make recommendations to Sears, which Sears agreed to follow, regarding reaffirmation agreements....

When Professor King made his recommendations, one of the recommendations he made, so that nobody would accuse Sears of secretly entering into reaffirmation agreements, was to disclose all of its redemption agreements that were entered into during the course of the case. And so, Sears started filing the memorandum of redemption. That's the background, Your Honor, of the memorandum of redemption.

(Tr. at 5–6 Jan. 19, 1999.)

We note that although Sears admits to not filing Motions for Redemption prior to Professor King's recommendations, such filings are mandated under Fed.R.Bankr.P. 6008. Because Sears did not file its memorandums of redemption prior to 1997, however, it is impossible for

us to determine if the increase in redemption filings is in part an attempt on Sears' behalf to make up for revenue lost due to the exposure and enjoinment of its sordid and much publicized 'reaffirmation program'. *See* Sears Subsidiary Admits Bankruptcy Fraud, Agrees to $60 Million Fine, 8 Consumer Bankruptcy News, Iss. 11 at 1 (Feb. 25, 1999).

4. Sears titles the redemption papers filed with this court 'memoranda of redemptions' because Sears feels it does not need to submit these redemption agreements via motion as required under Rule 6008.

5. Our General Order 98–01 states:

This Court has experienced an increase in the volume of motions to approve redemption agreements. The sketchy pleadings often make it impossible to determine whether the redemption agreements are authorized by law. 11 U.S.C. § 722; Fed.R.Bankr.P. 6008.

Accordingly, to conserve judicial resources, and to assure compliance with the law, it is hereby ordered as follows:

1. The signature of the debtor on a redemption agreement shall be deemed to authorize the creditor to file a joint motion for approval. *See* Fed.R.Bankr.P. 6008.

2. A motion to approve a redemption agreement must include:

a) A copy of the redemption agreement;

b) A copy of the instruments creating and perfecting the security interest;

c) A complete description of the property, including original purchase price, date of purchase, amount paid, amount still due, and any other necessary information upon which the Court may make a determination as to the appropriateness of the requested action.

3. All motions for approval of agreements to redeem property for payments totaling $1,000 or more in principal, interest, and charges shall be set for hearing. Attendance by creditor's counsel is mandatory.

4. All other motions for approval may be submitted to the Court for *ex parte* determination. The Court shall have discretion to set the matter for hearing and require attendance by the creditor, creditor's counsel, debtor's counsel, and/or the debtor.

deem a refrigerator and a washer from Sears.[6] The documents supplied did not comply with our General Order No. 98–01. We set the matter for hearing. In written and oral argument,[7] Sears claimed it had no statutory duty to submit its 'memoranda of redemptions' to the Court, that our General Order mandating Court approval of such agreements conflicted with 11 U.S.C. § 722, and that we lacked jurisdiction to entertain the validity of such agreements.

## DISCUSSION

Under 11 U.S.C. § 722, debtors have a non-waivable right to redeem exempt or abandoned consumer goods used for personal, family, or household purposes.[8] To redeem such property, debtors must pay the allowed secured claim. The value of a secured claim "... shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

Sears first argues that our General Order contradicts the express wording of § 722. According to Sears, § 722 gives a debtor the unfettered right to redeem qualifying property by paying the 'replacement value' of the collateral. Sears claims that it is the act of payment, and not court approval, that sanctifies the validity of a redemption.

We do not agree with Sears' interpretation of the statute. While § 722 gives a debtor

---

**6.** The mechanics regarding Sears' redemption practices was described to the Court as follows:

Procedurally, to determine the FIFO ["First In First Out"] application of payments to a customer's account, Sears has a specialist review the purchases and payment history of each debtor. The earliest purchases are first credited with payments. The result of that effort is a list of items which (sic) have not been paid for, ranging from the item purchased closest to the bankruptcy down to the last item which (sic) the FIFO allocation of payments did not fully pay. With regard to that last item, if more than sixty percent of the item was paid, the item is not considered secured. If less than sixty percent is paid, the item will appear at the lower of the remaining purchase price or its value, determined by Sears valuation tables.

At the beginning of the case, Sears sends a letter to the debtor listing the items of collateral which are unpaid and states their fair market value. An example of such letter is attached. Sears proposes to the Court that this letter or the information contained in the letter be attached to the memorandum of redemption to inform the Court which items are subject to Sears' security agreement and showing their replacement value as determined by Sears tables.

Letter from Ronald L. Rose of Dykema Gossett, PLLC, for Sears, (Jan. 31, 1999) (on file with United States Bankruptcy Court, District of Vermont). *See also In re Spivey*, 230 B.R. at 486–488 (describing Sears redemption procedures).

**7.** Sears claims that "there is no authority for the proposition that a debtor or creditor must file a document listing the agreed redemption amount". (Sears Brief in Support of Motion for Reconsideration of General Order 98–1 at 9). "Sears' § 722 redemption practices are in full accord with ... the governing case law ..." *Id.* We note Sears fails to cite *In re Lopez*, 224 B.R.

439 (Bankr.C.D.Cal.1998), an omission we find intentional, material and ultimately irrational, especially because it was a party in that case. While counsel is under no ethical duty per se to disclose the case because it is not binding precedent in this jurisdiction, we do not understand the obvious omission of applicable case law. In *Lopez*, Sears made identical arguments to the ones it makes here, arguments that failed in the California court. "Sears asserts that it does not need court approval of a redemption agreement in order to have such agreements be binding on the parties thereto. In fact, Sears asserts that it need not even file such agreements with the court and that it has does so here voluntarily. Sears's position is not supported by the Code or by the Federal Rules of Bankruptcy Procedure." *Id.* at 441. Surely *Lopez* is "authority for the proposition that a debtor or creditor must file a document listing the agreed upon redemption amount," contrary to representations that no such authority exists. Our own research revealed *Lopez*. We feel misled by Sears' actions. It seems little has been learned from the reaffirmation fiasco. Counsel would have been better off arguing against the rationale set forth in *Lopez* rather than attempting to bury its head, and ours, in the sand.

**8.** § 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim to such holder that is secured by such lien.

11 U.S.C. § 722.

the option to redeem by paying the value of the goods, the section "... does not explicitly state whether redemption agreements must be filed with the court or whether court approval of these agreements is required. However, court involvement in the redemption is implied by the requirements of this section." *In re Lopez*, 224 B.R. 439, 441 (Bankr.C.D.Cal.1998). We find Sears' argument that the statute prohibits court involvement tenuous at best because § 722 says absolutely nothing about court approval of redemption agreements.

While § 722 gives debtors a nonwaivable right to redeem by paying the value of the collateral, contrary to Sears' assertion, court involvement does not interfere with this substantive right. Debtors still maintain an absolute right to redeem collateral; the court merely reviews the agreement to determine its compliance with the Code. Rather than limit a debtor's substantive rights, such review ensures that those rights are not infringed. "The Code's inclusion of several defined terms—each connoting a legal status and some with their own procedural predicates ... [supports the conclusion that] Congress contemplated judicial oversight of the redemption process." *In re Spivey*, 230 B.R. 484, 489 (Bankr.S.D.N.Y.1999). Court scrutiny will prevent overreaching by secured creditors, while at the same time making sure that the price set on the collateral is consistent with § 506(a).

A cursory examination of the Bankruptcy Rules evidences the efficacy of such review. Under Rule 6008, redemptions are Contested Matters [9] and must be dealt with by motion to the court.[10] Rule 6008 states "On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with

applicable law." Fed.R.Bankr.P. 6008. Contrary to Sears' position, Rule 6008 explicitly requires that a debtor file a motion before redeeming property under § 722.

Sears argues that Rule 6008's requirement of motion to the court for approval is inconsistent with the unfettered right of a debtor to redeem by payment granted by § 722. Again, we disagree. As noted earlier, § 722 is silent as to whether or not the Court must approve motions to redeem. We find no conflict between the rule and statute.

Citing a popular bankruptcy treatise, Sears next argues Fed.R.Bankr.P. 6008 applies only when a debtor wishes to redeem but can not agree with the creditor on a proper valuation of collateral:

> Only when there is a dispute as to value should the court be called upon to act. If there is a dispute, the matter should be brought before the court by way of motion, and upon an objection or other dispute being raised, a contested matter under Rule 9014 is initiated. It should also be noted that nothing in the Code or Rules ever requires a redemption agreement be filed with the court. Thus, absent disagreement no court involvement is necessary.

10 Collier on Bankruptcy ¶ 6008.03 (Lawrence P. King 15th ed.1998) (footnotes omitted). Accordingly, Sears claims that because its 'memorandums of redemption' contain valuations to which debtors concede, there is no need for court review under Rule 6008.

■ Again, we wholeheartedly disagree with Sears' reading of the Rule. "Although a dispute as to value is one reason for holding a hearing, the language of Rule 6008 does not support the view that this is the sole basis for a hearing." *In re Lopez*, 224 B.R. at 444. The Rule itself makes no mention of valuation, and a plain reading of the rule renders

9. "The rule [6008] applies also to a debtor exercising a right of redemption pursuant to § 722. A proceeding under that section is governed by Rule 9014." Fed.R.Bankr.P. 6008 advisory committee's note (1983).

10. Rule 9014 reads:
    In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and rea-

sonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint ...
Fed.R.Bankr.P. 9014

it applicable to all redemptions. *See* Fed. R.Bankr.P. 6008; *In re Lopez*, 224 B.R. at 444. We see absolutely no reason to read into the Rule a requirement that clearly was not envisioned by its authors.[11] "If motions for approval of redemption agreements were optional, Rule 6008 would be superfluous. If a dispute arose regarding redemption pursuant to § 722, the parties would simply proceed under Rule 9014 regarding contested matters." *Id.*

■ Neither Rule 6008 nor § 722 mandate that we accept the parties' determination of the allowed secured claim under redemption. As noted earlier, § 722 is silent as to court involvement. Further, Rule 6008 says that the court may, not must, approve a motion for redemption. Accordingly, we have discretion to deny authorization, even if the parties agree on the redemption price. "There is no reason to suppose that the court is bound by the parties' valuation." *In re Lopez*, 224 B.R. at 443 (citations omitted).

Sears argues that when the parties agree on the redemption price, court involvement is unnecessary. According to Sears, these agreements "represent an agreement of the parties, similar to a contract .... federal courts have stated that they will not advise parties in drafting a contract.... '[O]ne of the vital reasons for denying this potential judicial service is that, left to their own devices, the parties are apt to draft a better instrument than a court.'" (Sears' Supplemental Brief in Support of Motion for Reconsideration of General Order 98–01, at 6–7) (quoting 13 Charles A. Wright, et al., Federal Practice and Procedure, § 3529 (2d ed.1984)).

■ Sears misses the point. First of all, § 722 does not say that the valuation of collateral should be based upon the subjective beliefs of a debtor or creditor. The redemption price is set by and governed under statute. Accordingly, we are bound by the statutory valuation as defined in § 506, and any agreement by the parties will be deemed totally irrelevant if the parties' valuation does not fall within the statutory boundaries.

Further, this 'contract' argument does not acknowledge the disproportionate leverage wielded by a secured creditor in negotiating the amount of a secured claim under § 506(a):

> Frequently, a creditor lending money to a consumer debtor takes a security interest in the debtor's belongings and obtains a waiver by the debtor of his exemptions. Often, the debtor is unaware of the consequences of the form he [or she] signs. Creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment. In fact, were the creditor to carry through on this threat and foreclose on the property, he [or she] would receive little, for household goods have little resale value, and are more valuable to the creditor in the debtor's hands as leverage for the creditor, because replacement costs of the goods are generally high.

Elaine K. Zipp, Avoidance Under 11 U.S.C.A. § 522(f)(2) of the Bankruptcy Code of 1978 Of Nonpossessory, Non–Purchase–Money Security Interest In Debtor's Exempt Personal Property, 55 A.L.R.Fed. 353 § 2(a) (1981).[12]

---

11. We note that treatises make interesting, insightful, and sometimes even compelling reading. But ultimately, the opinions of the authors contained therein are not the law, and when they so clearly misstate the applicable law, we give them little credence. We further note that Collier's position is only recently adopted. Prior to the March 1998 revision, the treatise stated: "Redemption under section 722 (by a chapter 7 debtor) is governed by Rules 6008 and 9014. Rule 6008 requires a motion followed by notice and hearing." 10 Collier on Bankruptcy ¶ 6008.01 (15th ed. revised 12/96). *See also In re Spivey*, 230 B.R. at 488–489.

12. We note that this article is not directly on point, because Sears retains a purchase-money security interest in its household goods. The rationale, however, is the same. We are skeptical that Sears plans to resell much of the collateral it threatens to 'repossess'. The costs of repossessing, refurbishing, and reselling many household goods would not be worth Sears' time and effort, and the threat of repossession therefore is probably an empty one in many circumstances. We think a major reason Sears retains security interests in household goods is to give itself the unwieldy leverage noted in the above-quoted article. When push comes to shove, we doubt Sears looks to the collateral in the event of nonpayment in many instances. Fortunately for

Accordingly, a debtor often lacks the requisite leverage to bargain for a proper redemption price. We hold Rule 6008 is a prudent measure mandating our involvement to prevent abuse.

■ Sears finally makes the strange argument that we do not have jurisdiction over redemption agreements, because they involve property that is not in the estate:

> The Court's authority to promulgate General Order 98–01 appears to be based upon the false premise that an asset of the estate is involved. However, redemption under 11 U.S.C. § 722 is available under the terms of the statute itself only for exempt or abandoned property, property that is not an asset of the estate.... Because no asset of the bankrupt (sic) estate is involved, the Court is without authority to act with regard to redemptions that meet statutory muster.

(Sears' Supplemental Brief in Support of Motion for Reconsideration of General Order 98–1 at 6).

For several reasons, Sears' argument is rejected.

First, all of a debtor's pre-petition property is property of the estate until that property is deemed exempt. It is for the Court, not Sears, to determine what property is properly exempted from the estate.

Second, Sears' argument begs the question, because it assumes from the outset that its agreements meet statutory muster. Such a determination, however, must be made by a court, not by Sears.[13] "Thus, where the statute establishes certain predicates to an action and their existence has not yet been established, the consent of all parties does not vitiate the court's power to ensure compli-

ance with the statutory requirements." *In re Spivey,* 230 B.R. at 490.

In making this determination, we must determine if the claim is allowed under § 502. We must determine that the price comports with the statutorily allowed price under § 506(a). We must determine that the goods sought to be redeemed are redeemable under the Code.[14] We must determine that the creditor is in fact secured, and that the security interest attaches to redeemable goods. These are important questions of law that must be answered before a secured creditor is allowed redemption payments on collateral.

In short, we must be satisfied that all of the underlying requirements of § 722 and the Code are complied with in order to preserve a debtor's estate and protect the integrity of the entire process. Mere boilerplate language on Sears' 'memorandums of redemption' that the goods are exempt or abandoned is not enough in our eyes. "Under Sears' reading of the statute, a creditor effectively determines unilaterally the validity of its lien; the case trustee is not given the opportunity to assert the rights of the estate in the property .... it is clear that by soliciting redemption agreements at the Section 341 meetings Sears all but ensures this requirement [that property be exempt or abandoned] will not have been met by the time it asks the debtor to execute the agreement." *In re Spivey,* 230 B.R. at 489. We think it would be a strange situation indeed if the secured creditor were left to its own devices in determining all of the important legal issues noted above. "An unscrupulous creditor could, by asserting that it has a valid security interest and threatening a debtor with repossession, obtain a redemption payment to which it is not entitled." *In re Spivey,* 230 B.R. at 490.

___

Sears, debtors are reluctant to push when Sears shoves, because to do so would be to risk losing household goods that could not be easily replaced.

13. In fact, we would be reluctant to defer to any interpretations of statute offered by Sears, especially due to its penchant for omitting applicable case law in making such interpretations. *See* note 7.

14. We note that in *Lopez,* Sears sought a redemption payment on collateral that had not yet been deemed exempt or been abandoned by the Trustee, and was therefore not legally redeemable under the § 722. As the court noted, "If the court were not involved in the redemption process, these facts would not have come to the Court's attention. Court review of redemption agreements is necessary to determine the accuracy of statements contained in the agreements ..." *In re Lopez,* 224 B.R. at 442.

Sears has stated to this court that it uses 'replacement value' as defined in the recent Supreme Court decision *Associates Commercial Corp. v. Rash*, —— U.S. ——, 117 S.Ct. 1879, 1885–1886, 138 L.Ed.2d 148 (1997). *Rash* held that where a chapter 13 debtor wishes to retain secured collateral over objection of a creditor, the value of the secured claim under § 506(a) is measured by what costs a debtor would incur in obtaining like property for the same proposed use (i.e., the 'replacement value'). *Id.*, —— U.S. at ——, 117 S.Ct. at 1885–1886. We are not sure what Sears means by replacement value in the context of redemption. In this memorandum of decision, the issue of valuation is not properly before us. We write only for completeness and to provide Sears and other secured creditors with some thoughts about valuation issues that we may hear in the future.

Even if the *Rash* standard of evaluation could be consistently determined by agreement of the parties without court supervision, we are mindful of recent decisions holding the *Rash* standard inflated and inapplicable to Chapter 7 redemptions.[15] "(T)he application of the replacement value standard does not reflect the 'purpose of the valuation and the proposed disposition or use of such property' in the context of redemption under chapter 7." *In re Donley*, 217 B.R. 1004, 1006 (Bankr.S.D.Ohio 1998) (quoting 11 U.S.C. 506(a)).

Such cases offer convincing arguments why *Rash* should not apply in determining § 722 redemption values:

First of all, the legislative history to § 722 supports a valuation standard different from that of replacement value. According to the House report, redemption

... "amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract." These comments strongly suggest that Congress, in enacting § 722 as part of the Bankruptcy Reform Act of 1978, intended to place the creditor in the same position it would have been in had the property not been redeemed and the creditor had repossessed and caused a sale of such property.

Prior to *Rash*, it appears to have been the opinion of the Sixth Circuit, expressed in dicta, that a debtor may redeem tangible secured personal property by paying the creditor the approximate fair market value of the property. The Court indicated that fair market value in the context of a redemption contemplated a sale for the benefit of the creditor. Therefore, both the legislative history to § 722 and the understanding of the Sixth Circuit before *Rash* support a standard whereby a creditor's allowed secured claim in property to be redeemed is measured by what a sale for the benefit of the creditor would bring or the amount of the creditor's claim, whichever is less.

*In re Donley*, 217 B.R. at 1007.[16]

The court in *In re Donley* noted *Rash's* mandate to use 'replacement value' under § 506(a), but found that this mandate did not apply to a § 722 analysis. "As the Supreme Court noted, retention and use of collateral by the debtor in a chapter 13 cramdown exposes the secured creditor to a double risk of future default by the debtor and the dete-

---

**15.** *See In re Williams*, 228 B.R. 910 (Bankr. N.D.Ill.1999); *In re Donley*, 217 B.R. 1004 (Bankr.S.D.Ohio 1998); *In re Williams*, 224 B.R. 873 (Bankr.S.D.Ohio 1998). Again, we note that the issue of proper valuation under § 722 is not before the court at this time, and we do not rule on this issue here.

**16.** *See also In re Hart*, 8 B.R. 1020, 1022 note 2 (N.D.N.Y.1981) ("Since (sic) the most likely use in most cases is sale for benefit of the creditor, ... the value generally approximates the then market value of the property."); 3 William L. Norton et al., Norton Bankr.L. & Prac.2d § 69:7

(1998) "An appropriate standard of valuation would reflect the price that the creditor could have obtained for the collateral after repossession. This approach would be consistent with the statute's purpose of providing a 'first right of refusal for the debtor in consumer goods that might otherwise be repossessed.' The legislative history of § 722 indicates that the value at which property should be redeemed is the 'fair market value', however, that standard is still a fluid concept which leaves unsettled the precise amount that the creditor should receive." (citations and footnotes omitted).

rioration of the property from extended use. In contrast, redemption involves neither of these risks. Therefore, imposition of the replacement value standard is probably inappropriate in redemption cases." *In re Donley*, 217 B.R. at 1007; *See also Amresco New England II L.P. v. Vescio (In re Vescio)*, 227 B.R. 352, 354 (Bankr.D.Vt.1998) ("*Rash* requires that the 'double risks' from a debtor's continued use of the property be accounted for in the valuation process, by using the 'replacement value standard' to value property to be retained by the debtor ..."); *In re Goodyear*, 218 B.R. 718, 721–722 (Bankr. D.Vt.1998) (*Rash* demands the risk premium be accounted for in valuation of property a debtor seeks to retain rather than a heightened interest rate). The risks compensated for by the *Rash* replacement value standard are nonexistent here because redemptions forced on a secured creditor must be paid in a lump sum at the moment a debtor redeems the property. *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer)*, 19 B.R. 860, 862–865 (Bankr.E.D.N.Y.1982).

As we noted earlier, the issue of valuation is not before us, and we decline to rule on whether or not *Rash* supplies the proper standard.[17] We do note, however, that such important [18] issues of statutory interpretation regarding debtors' allowed secured claims are to be determined by the Court, not by agreement between a secured creditor and a debtor. *See In re Spivey*, 230 B.R. at 489 ("section 506(a) contemplates a judicial determination of the amount of a secured claim ...").

## CONCLUSION

■ For the reasons noted above, we find that General Order No. 98–01 complies with the Bankruptcy Code. The Order merely requires that parties seeking to redeem estate property file the requisite information enabling us to determine that the redemption complies with the Code.[19] Sears argues that requiring redemptions to be filed by motion of a debtor will increase the costs to debtors,

**17.** While the rationale cited in *In re Donley* and its progeny is impressive, some commentators have been critical in that it applies a 'foreclosure value' rather than the mandated 'fair market value'. Kathryn R. Heidt & Jeffrey R. Waxman, Supreme Court's Decision Fails To Scratch The Valuation Itch, 53 Bus.Law. 1345, 1369 (1998). Further criticism of this approach is based upon the allegation that it fails to value the disposition or use of the property from the debtor's perspective, as mandated by *Rash*. *See* David Wheeler, Redemption Under § 722: Possible End–Run Around Rash, Am.Bank.Inst.J., Nov. 1998, 16–17 (arguing that there should be only one standard under § 506(a)).

One standard of valuation, however, would seem to undermine § 722's purpose. The legislative history explicitly seeks to avoid "high replacement values." Further, using a replacement value standard under § 722 redemptions would render § 722 a useless tool. A debtor theoretically could go out and purchase replacement property of a like quality rather than redeem with the secured creditor, because under either scenario a debtor would have to pay the same price for similar property. Any alleged benefit granted to debtors under § 722 would be illusory or nonexistent.

**18.** Even if *Rash* is the appropriate standard to use under § 722, due to the disproportionate bargaining power of the parties noted above, and especially due to the nature of the goods often involved, we find it more likely than not that the *Rash* value would not be determined by the par-

ties. Only consumer and household goods may be redeemed. These goods lose much of their value once taken off the showroom floor, and a 'willing buyer' would take this into account when buying used goods. This loss of value, however, will often not be seen by a debtor's eyes, at least to those specific goods purchased. A debtor, familiar with its own household goods, will likely value those goods over 'like property' of another person. We do not think it is unreasonable to assume that often, such a debtor would be willing to pay a premium to keep his/her own goods, rather than purchase used goods on the open market. Such a premium paid by a debtor does not comply with the *Rash* standard, which demands an objective valuation of the property. Accordingly, we think it is our duty to examine § 722 redemptions to make sure that any premium is not included in the redemption price. We note that a depreciation table used by Sears to determine redemption prices seems to have inflated redemption prices, even under the more liberal *Rash* standard. That table was provided to us *in camera* by Sears for inspection. We make no findings on the correctness or accuracy of the deprecation table.

**19.** We have previously represented to Sears that part of the information required is a "complete payment history" of Debtor's payments on the collateral. Upon reconsideration, we find that such documents are not necessary, and do not require them of Sears or of any other creditor for the time being.

making reaffirmation a more viable option.[20] Such concern is allayed by the fact that our General Order allows a debtor's signature to authorize the creditor to file a joint motion. This is not contrary to Rule 9014, which says redemptions must be filed by motion by the debtor or trustee. Finally, we do not require a hearing in all instances, which will minimize costs to debtors and creditors alike. Such discretion to set hearings is in accordance with Rule 6008.

Sears claims that it files its redemption agreements not due to any Code mandate, but "simply to make full disclosure of its dealings with debtors and thereby avoid any assertions of misdeeds due to its redemption procedures." (Sears' Supplemental Brief in Support of Motion for Reconsideration of General Order 98–01 at 9). If this is true, Sears will have no qualms with our decision here today, because, in effect, that is all that our General Order requires. Our Order simply demands that the information needed to determine whether these agreements comply with the Code be supplied to this Court, no more and no less. Until such compliance is found and ruled upon by motion to this Court, Sears, like all other secured creditors, is not entitled to receive any redemption payments from debtors. We deny Sears request to modify General Order No. 98–01.

Finally, we will also direct Sears to file with us any redemption agreements since 1978 that it has not properly filed with this Court.

Counsel to submit an Order within 5 days.

---

**20.** We think that much of the alleged increase in costs incurred by debtors will be effectively offset by our Order because creditors will realize that these 'agreements' will be subject to our scrutiny, and will thus avoid overreaching.