**In re Sidney SPIELFOGEL, Debtor.**

**Richard L. Stern, as Chapter 11 Trustee, for the Estate of Sidney Spielfogel, Plaintiff–Appellee,**

**v.**

**Bambu Sales, Inc., Defendant–Appellant.**

**No. CV 98–5042(ADS).**

United States District Court,
E.D. New York.

Aug. 18, 1999.

Rivkin, Radler & Kremer, Uniondale, NY, By Scott Y. Stuart, Eileen M. Cohan, Of Counsel, for Plaintiff–Appellee Richard L. Stern, Chapter 11 Trustee.

Morgenthau, Greenes, Goldfarb & Aronauer, P.C., New York City, By Joseph Aronauer, Kenneth S. Yudell, Of Counsel, for Defendant–Appellant Bambu Sales, Inc.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The defendant-appellant Bambu Sales, Inc. ("Bambu") appeals from a decision of

United States Bankruptcy Judge Dorothy D.T. Eisenberg dated June 26, 1998, which held that Bambu must pay the debtor's pro rata share of the dividends issued after Bambu had elected to purchase the debtor's shares pursuant to New York Business Corporation Law ("BCL") § 1118.

## I. BACKGROUND

### A. The Dissolution Action

The debtor, Sidney Spielfogel (the "debtor" or "Spielfogel"), filed a Chapter 11 bankruptcy petition in this District on April 3, 1995. Shortly thereafter, Spielfogel, who owned 21.6% of Bambu's outstanding shares, commenced an action in New York State Supreme Court, Nassau County, for the dissolution of Bambu. Bambu is a corporation in the business of the wholesale distribution of cigarette paper manufactured in Spain and sold under the registered trademark "Bambu." The petition for dissolution was precipitated by the debtor's allegations of mismanagement and corporate waste by the majority shareholders of Bambu.

On August 15, 1995, Bambu elected to purchase Spielfogel's shares at fair value, pursuant to BCL § 1118. Although the election was made in 1995, Bambu did not remit payment for the fair value of the shares until March 3, 1998.

In October 1995, upon the motion of a committee of unsecured creditors, the Bankruptcy Court removed Spielfogel as the debtor in possession and appointed Richard L. Stern (the "Trustee") as the Operating Trustee of the estate. The Trustee was substituted for the debtor in the dissolution action by Order dated February 27, 1996.

### B. The Dividend

On or about April 15, 1996, Bambu paid a dividend to all Bambu shareholders, excluding the debtor. On Appeal and before the Bankruptcy Court, the Trustee refers to this as the "1995 Dividend," stating that although the dividend was paid in 1996, it was actually paid for the business in the prior year. Bambu did not pay any dividend to the bankruptcy estate because, in the corporation's view, the debtor was not entitled to a dividend distribution after the company elected to purchase the shares in August 1995.

In response, on June 3, 1996, the Trustee filed an adversary proceeding in the Bankruptcy Court demanding the payment of Spielfogel's pro rata share of the dividends paid in 1996 which, apparently, would have amounted to the sum of approximately $50,000. On the same date, the Trustee also filed an application for an order directing that he be allowed to review the books and records of Bambu and to disseminate certain information contained in these records to third parties interested in purchasing Spielfogel's interest in the corporation. Bambu opposed this motion and filed its own motion requesting that the bankruptcy court abstain from deciding the dividend issue on the ground that the issue involved a question of New York law that should be determined in the pending state court dissolution action.

### C. Judge Eisenberg's Rulings

During a hearing held on July 31, 1996, Judge Eisenberg orally ruled that the dividend question was a "core" issue and, as such, would be determined by the Bankruptcy Court. In a follow-up Order issued on October 24, 1996, Judge Eisenberg: (1) denied Bambu's motion for abstention in all respects; (2) held that the issues of inspection of Bambu's books and records and dissemination of information to third parties were also "core issues"; and (3) directed that the Trustee be allowed to inspect certain of Bambu's books and records and to disseminate information contained in the records to interested third parties.

During a hearing held before Judge Eisenberg on October 29, 1996, Bambu argued that under New York law, the debtor was only entitled to the value of his shares

when Bambu elected to purchase them, plus interest. In response, the Trustee argued that the debtor's interest as a shareholder was not completely cut off by virtue of Bambu's BCL Section 1118 election, and that the bankruptcy estate was entitled to the dividends that were issued in 1996, before Bambu actually purchased the shares. The Trustee also argued that the dividends should be paid until the redemption of the debtor's stock interest, which had not occurred as of the that date, and in fact, did not occur until March 3, 1998.

At the October 29, 1996 hearing, Judge Eisenberg orally ruled that the bankruptcy estate was entitled to payment of the disputed dividend declared in 1996. Judge Eisenberg held that a minority shareholder who commences dissolution proceedings continues to maintain rights as a shareholder, and the fact that a dissolution proceeding was commenced does not divest the shareholder of his status as such. The Bankruptcy Court noted that a shareholder in such a position may not be permitted to vote on future actions of a corporation on its day-to-day operations or in other matters because the shareholder may no longer have the corporation's best interests at heart. Nevertheless, Judge Eisenberg observed, under BCL § 1118, prior to there being any evaluation and payment, the shareholder retains title to and an ownership interest in the stock, including the right to dividends. As Judge Eisenberg put it, "He's the rightful owner until there is a determination of a fixed price and an order requiring payment. That's when there's a shift [to being a] creditor. . . . But at the moment he's still a shareholder."

### D. Judge Gershon's Decisions

Before Judge Eisenberg's determination with regard to the dividend became the subject of a final order, Bambu appealed Judge Eisenberg's October 24, 1996 Order denying its abstention motion to this Court, which appeal was assigned to United States District Judge Nina Gershon. While that case was pending before Judge Gershon, Bambu filed an action in Supreme Court, Nassau County, seeking a declaratory judgment with respect to the rights of the estate, if any, to all dividends Bambu declared after the BCL election to purchase the debtor's shares. The Trustee removed the action to this Court pursuant to 28 U.S.C. § 1452. The action was originally assigned to United States District Judge Jacob Mishler, but eventually was transferred to Judge Gershon.

On April 15, 1998, Judge Gershon issued a decision which: (1) held that the issue of the Trustee's right to recover the Bambu dividend was a "core" proceeding within the meaning of 28 U.S.C. § 157; and (2) affirmed Judge Eisenberg's denial of Bambu's abstention motion. *In re Spielfogel,* No. 96 Civ. 4786, 1998 WL 273033 (E.D.N.Y. Apr. 15, 1998).

On September 1, 1998, Judge Gershon denied Bambu's motion for remand, abstention and removal of the declaratory judgment action. Judge Gershon also referred the case to Judge Eisenberg. *Bambu Sales, Inc. v. Stern,* No. 98 Civ. 1952, 1998 WL 760335 (E.D.N.Y. Sep. 1, 1998).

### E. The Valuation Proceeding

On September 22, 1997, a hearing was held in New York Supreme Court, Nassau County (O'Brien, J.), to determine the fair value of the debtor's 21.6% interest in Bambu. On December 17, 1997, the Court issued a decision determining the value of the shares held by the debtor to be $428,195, plus interest from the valuation date of 5.75% per year. The fair value did not include the dividend paid in 1996. Bambu remitted payment to the Trustee in the amount of $495,869.09 on March 3, 1998, representing the value of the debtor's shares plus pre-judgment interest from the valuation date of April 16, 1995, the day before the petition was filed as mandated by Section 1104–a of the BCL.

### F. The Order Appealed From

By Order dated June 26, 1998, Bankruptcy Judge Dorothy Eisenberg rendered a decision in favor of the Trustee, encompassing the findings made at the October 29, 1996 hearing. This Order stated that the Bambu was liable to the Trustee for the dividend declared in 1996. In addition, because of the delay caused by Bambu's appeal from the decision on the abstention and remand issues, Judge Eisenberg suspended the requirements of Local Bankruptcy Rule 9072–1, relating to the timely settlement of orders, for purposes of entry of the June 26, 1998 Order.

## II. DISCUSSION

### A. Standard of Review

Under Fed.R.Bankr.P. 8013, findings of fact made by the Bankruptcy Court are reviewed under a "clearly erroneous" standard, while conclusions of law are reviewed de novo. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132 (2d Cir.1994); *In re PCH Assocs.*, 949 F.2d 585, 597 (2d Cir. 1991); *In re Sundial Asphalt Co.*, 147 B.R. 72, 79 (S.D.N.Y.1992). The parties agree that the central issue on appeal is a question of law, namely, whether under New York law, the Trustee is entitled to a pro rata share of a dividend that Bambu declared in April 1996, more than eight months after Bambu elected to purchase the debtor's Bambu shares but prior to Bambu actually paying the debtor the fair value of the shares.

### B. The Relevant Provisions of the BCL

The debtor brought a dissolution action pursuant to BCL § 1104–a, which statute permits the holders of 20% or more of the outstanding shares of a corporation who are entitled to vote for the directors of the corporation to bring a petition for dissolution.

The remaining Bambu shareholders elected to purchase the debtor's interest pursuant to BCL § 1118. Section 1118 provides as follows:

(a) In any proceeding brought pursuant to section eleven hundred four-a of this chapter, any other shareholder or shareholders or the corporation may, at any time within ninety days after the filing of such petition or at such later time as the court in its discretion may allow, elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court, including the conditions of paragraph (c) herein. An election pursuant to this section shall be irrevocable unless the court, in its discretion, for just and equitable considerations, determines that such election be revocable.

(b) If one or more shareholders or the corporation elect to purchase the shares owned by the petitioner but are unable to agree with the petitioner upon the fair value of such shares, the court, upon the application of such prospective purchaser or purchasers or the petitioner, may stay the proceedings brought pursuant to section 1104–a of this chapter and determine the fair value of the petitioner's shares as of the day prior to the date on which such petition was filed, exclusive of any element of value arising from such filing but giving effect to any adjustment or surcharge found to be appropriate in the proceeding under section 1104–a of this chapter. In determining the fair value of the petitioner's shares, the court, in its discretion, may award interest from the date the petition is filed to the date of payment for the petitioner's share at an equitable rate upon judicially determined fair value of his shares.

(c) In connection with any election to purchase pursuant to this section:

(1) If such election is made beyond ninety days after the filing of the

petition, and the court allows such petition, the court, in its discretion, may award the petitioner his reasonable expenses incurred in the proceeding prior to such election, including reasonable attorneys' fees;

(2) The court, in its discretion, may require, at any time prior to the actual purchase of petitioner's shares, the posting of a bond or other acceptable security in an amount sufficient to secure petitioner for the fair value of his shares.

BCL § 1118.

### C. Was the Debtor Entitled to the Dividend Payment Issued in 1996?

In the Court's view, the debtor's estate was entitled to payment of the dividend, for substantially the same reasons set forth by Judge Eisenberg.

As Judge Eisenberg aptly observed, *Independent Investor Protective League v. Time, Inc.,* 50 N.Y.2d 259, 428 N.Y.S.2d 671, 406 N.E.2d 486 (1980) and *Slade v. Endervelt,* 174 A.D.2d 389, 571 N.Y.S.2d 452 (1st Dept.1991) are instructive. The New York State Court of Appeals held in *Independent Investor Protective League* that even "when the corporation has dissolved, the shareholder's interest does not abruptly end. At a minimum, the stockholder possesses a substantial interest in the distribution of corporate assets. And, even if dissolution and distribution of assets are accomplished contemporaneously, the shareholder's stake in any cause of action existing in favor of the corporation remains quite real." 50 N.Y.2d at 264, 428 N.Y.S.2d at 674, 406 N.E.2d 486. Given that the debtor's status as a shareholder was not put to an "abrupt[ ] end," *id.,* by virtue of the election, he was entitled to the post-election dividend.

This proposition is illustrated in *Slade,* where, as here, a minority shareholder brought proceedings to dissolve a corporation, and the corporation elected to purchase all of the stockholder's shares at fair value. While the valuation proceeding was pending, the shareholder commenced a derivative action on behalf of the corporation against corporate officials based on alleged looting and waste. The corporation moved to dismiss the derivative suit on the ground that the shareholder lacked standing once the corporation elected to purchase the shares. The Appellate Division disagreed with that theory, and held that the shareholder could not be stripped of her status as such and placed in the position of a general creditor by virtue of corporation's election to purchase the shares. The First Department explained:

> [The corporate d]efendants have offered neither authority nor any logical rationale for their argument that by virtue of their election to purchase plaintiff's shares rather than permitting the dissolution proceeding to go forward, they could strip her of her status as a shareholder and place her in the position of a general creditor, without such interest in the corporation as would permit her to bring a derivative action. *Not only does the Business Corporation Law fail to describe a person in plaintiff's position as a general creditor, but, in any event, since plaintiff, at this point, is not yet owed a fixed sum there is no basis upon which to find or infer that she occupies such status.*

*Slade,* 174 A.D.2d at 390–91, 571 N.Y.S.2d at 453 (citation omitted)(emphasis added).

■ Thus, as the Bankruptcy Court correctly held, the stockholder "remains a shareholder in the corporation until payment is made for the fair value of his shares...." *Matter of Davis,* 174 A.D.2d 449, 452, 571 N.Y.S.2d 234, 236 (1st Dept.), *appeal dismissed,* 79 N.Y.2d 820, 580 N.Y.S.2d 190, 588 N.E.2d 88 (1991). Accordingly, given that at the point in time when the dividend was distributed, the debtor was "not yet owed a fixed sum [for his shares]," *id.,* he retained his shareholder status for purposes of entitlement to the dividend.

The Court distinguishes the cases Bambu cites in support of its position. For example, Bambu relies on *Martin Enterprises, Inc. v. Janover,* 140 A.D.2d 587, 528 N.Y.S.2d 855 (2d Dept.1988) for its argument that a shareholder is divested of his interest in a corporation upon the exercise of an option to purchase the shareholder's shares, rather than upon payment for the shares. In *Martin Enterprises,* the petitioner filed for dissolution of the corporation after she entered into an option agreement with the founder of the closely held corporation for the purchase of her stock. The Second Department held that because the petitioner was "not a shareholder entitled to vote" after she entered into the option agreement—a necessary prerequisite for a dissolution petition under the Section 1104-a(a)—"she was without standing to bring a proceeding to dissolve the corporation." *Id.* at 587, 528 N.Y.S.2d at 856. Accordingly, *Martin Enterprises* involved the petitioner's ability to initiate dissolution proceedings after she granted an option to purchase, and not the petitioner's entitlement to post-election dividends. As the Bankruptcy Court noted, while Spielfogel may well not have been considered a shareholder entitled to vote after the election, this does not undermine his status as shareholder for other purposes, such as receipt of dividends.

The Court also distinguishes the unpublished opinion by Justice Denis R. Hurley in *Matter of Gillman (Audio Den, Ltd.),* 11/25/88 NYLJ, page 27, col. 3 (Sup.Ct., Suffolk Co.). In *Gillman,* Justice Hurley concluded that the selling shareholder should not be "permitted to participate in post-election management" of the corporation. The Court does not dispute this proposition, which does not resolve of the question at issue here, namely, whether the shareholder is nevertheless entitled to dividends.

 Moreover, the Court does not agree with Bambu's contention that it is unfair to permit the debtor's estate to receive dividends in addition to interest because to do so would amount to impermissible "double-dipping." The suggestion of double-recovery and unfairness is not appropriate because "prejudgment interest [is] not a substitute for ... dividends." *Iglesias v. United States,* 848 F.2d 362 (2d Cir.1988). On the contrary, in the Court's view, it would be inequitable to deprive the bankruptcy estate of the dividend issued in 1996 when Bambu did not actually purchase the shares until more than two years later.

Finally, the Court disagrees with Bambu's argument that Judge Eisenberg's Order should be stricken due to the Trustee's failure to comply with Local Bankruptcy Rule 9072–1. Local Bankruptcy Rule 9072–1 provides:

> If, following a trial, hearing or decision in an adversary proceeding or contested matter, the Judge directs a party to settle an order, judgment or decree, the parties shall, within fifteen (15) days of the Judge's direction, file its proposed order, judgment or decree with the Clerk upon not less than five (5) days' notice to all parties to the adversary proceeding or contested matter.... If the order is not timely submitted or settled, the matter shall be deemed abandoned.

Local Bankruptcy Rule 9072–1.

 It was within the discretion of the Bankruptcy Court to "depart from the letter of local rule." *Somlyo v. J. Lu–Rob Enters.,* 932 F.2d 1043 (2d Cir.1991). The Bankruptcy Courts have inherent power to decide when a departure from its Local Rules should be excused or overlooked, and their inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule. *Id.* at 1048 (citations omitted); *see also Association for Retarded Citizens of Connecticut, Inc. v. Thorne,* 68 F.3d 547, 553–54 (2d Cir.1995). Judge Eisenberg exercised that discretion appropriately

562

here, where it was impossible to enter the final order regarding Bambu's liability to the bankruptcy estate because of the then-pending appeal to Judge Gershon.

## III. CONCLUSION

After reviewing the parties' submissions and for the reasons stated above, it is hereby

**ORDERED,** that the Order of United States Bankruptcy Judge Dorothy Eisenberg dated June 26, 1998 is affirmed in all respects; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**