SEARS, ROEBUCK & CO., Appellant,

v.

Joan SPIVEY, Appellee.

No. 99–CV–3797 (NGG).

United States District Court,
E.D. New York.

Aug. 8, 2001.

Philip D. Anker, Bruce M. Berman, Wilmer, Cutler & Pickering, Washington, DC,

Ronald L. Rose, Dykema Gossett, Bloomfield Hills, MI, for appellant.

Robert J. Musso, Rosenberg, Musso, & Weiner, LLP, Brooklyn, NY, for appellee.

### MEMORANDUM & ORDER

GARAUFIS, District Judge.

This bankruptcy appeal presents the question of whether a bankruptcy judge may nullify a consensual redemption agreement in the absence of a motion for its approval. Although I answer the question in the affirmative, I nevertheless conclude that the court below erred in its legal holding and therefore vacate the bankruptcy court's order of October 15, 1998 and remand the matter back to the bankruptcy court.

### I

Joan Spivey, represented by counsel, petitioned for voluntary Chapter 7 bankruptcy pursuant to 11 U.S.C. § 101 et seq. ("Bankruptcy Code") on July 23, 1998. Her creditors included, inter alia, Sears, Roebuck & Company ("Sears"). She valued her household goods, which she did not itemize and for which she claimed a collective exemption, at $750.00, and she scheduled Sears as an unsecured creditor owed $439.00. The proceeding was brought in bankruptcy court before then-Bankruptcy Judge Laura Taylor Swain.[1]

On August 31, at the creditors' meeting, Sears and Spivey entered into a redemption agreement ("Agreement"), concerning a particular piece of merchandise, a television/VCR unit ("TV") purchased by Spivey with her Sears credit card. The Agreement asserted that the TV was property exempted under § 522 or abandoned under § 554 and that Spivey was exercising

---

1. Judge Swain now sits as a district judge in the Southern District of New York.

her right under § 722 to redeem the TV for $153.89, a value agreed to by the parties as the fair market value for redemption purposes. The Agreement stated that Spivey would pay this amount in lump sum before September 30, 1998. Pursuant to the Agreement, Spivey made out two checks to Sears totaling $153.89. Sears deposited the check for $75.00 but not the other.

The appointed United States Trustee for Spivey's estate closed the meeting of creditors on August 31 and certified a no-distribution report on September 1. The report stated that the trustee had made a "diligent inquiry into the financial affairs" of the debtor and that there was "no property available for distribution from the estate over and above that exempted by law." Under the bankruptcy rules, the deadline to object to claimed exemptions expired thirty days later, on September 30. No one objected to the report, to any exemptions, or to the Agreement.

Sears filed the Agreement with the court. On October 15, 1998, after receiving the filed Agreement, Judge Swain sua sponte issued an order ("Bankruptcy Order"). Judge Swain ordered that, in the absence of a motion to approve the Agreement, the Agreement would be null and void and Sears should refund all monies paid by Spivey. No motion was made, and Sears remitted a check in the amount of $75.00 to Spivey.

On November 16, Sears moved for reconsideration of the Bankruptcy Order. Sears argued that redemption is a personal right of the debtor to arrange to retain personal property for household, family, or personal use without entering into less attractive reaffirmation agreements. Sears claimed that redemption is achieved, whether or not approved by the court, when a lump-sum payment is made pursuant to a consensual redemption agreement between the parties. Sears further submitted that if debtors were required to file a motion for court approval for every redemption agreement, redemption would become too expensive an option for many debtors. Judge Swain took Sears' motion under advisement. In the meantime, she granted Spivey a discharge under § 727.

On March 5, 1999, Judge Swain issued an Opinion and Order denying Sears' motion for reconsideration. *See In re Spivey,* 230 B.R. 484 (Bankr.E.D.N.Y.1999). She held that neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure authorizes the performance of redemption agreements absent judicial approval, and that policy reasons supported her conclusion. Accordingly, she declined to rescind or modify the Bankruptcy Order. *See id.* at 491. On March 15, Sears timely appealed her decision, pursuant to 28 U.S.C. § 158(a).[2]

## II

"Bankruptcy law aims to serve both the debtor and the creditor." *In re Morgan,* 182 F.3d 775, 778 (11th Cir.1999) (per curiam). Upon filing a Chapter 7 bankruptcy petition, all non-exempted property of the debtor becomes property of the bankruptcy estate and managed by the trustee. *See* 11 U.S.C. § 541(a); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The bankruptcy estate is then liquidated and the proceeds partitioned to the various creditors in satisfaction of the debtor's obligations. In this way, Chapter 7 gives the debtor a fresh start by expunging her

---

**2.** I granted The Retail Council of New York State leave to file an amicus brief in support of Sears' position.

debts, *see In re Boodrow,* 126 F.3d 43, 51 (2d Cir.1997), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *see also Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) (per curiam) (stating that bankruptcy is designed to "give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt' ") (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)), while enabling creditors to maximize their return through the liquidation of her assets.

A debtor may exempt from the bankruptcy estate particular articles of property needed to facilitate her fresh start. *See* 11 U.S.C. § 522(b); *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *In re Bell,* 225 F.3d 203, 215–16 (2d Cir.2000); *see also* H.R.Rep. No. 95–595, at 126 (Sept. 8, 1977) ("The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge."), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6087. Only specific property may be claimed as exempt; exemptable property includes, inter alia, the debtor's interest in certain personal, family, or household goods. *See* 11 U.S.C. § 522(d)(3).

Because the debtor retains ownership and possession of exempt property, a secured creditor's lien on the property remains unsatisfied. Although a bankruptcy discharge disposes of all personal liability of the debtor, *see id.* § 524(a)(2), a discharge does not dissolve a creditor's lien on exempt property, *see Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). Instead, the lien survives the bankruptcy proceedings and remains a vehicle for actions against the debtor *in rem.* *See Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Thus, although bankruptcy staves off actions against the debtor personally, it does not prevent *in rem* actions, such as repossession or foreclosure, to recover exempted secured collateral.

Of course, a debtor discharged from bankruptcy is unlikely to be able to meet her continuing obligations on liens securing exempt property, which she may then lose to foreclosure or repossession immediately after discharge. Such a loss would contravene the primary purpose of exemption in the first place. The Bankruptcy Code provides two methods by which a debtor may protect her exempt property against *in rem* actions: reaffirmation and redemption.[3]

A debtor may reaffirm her personal liability on a dischargeable debt in exchange for less burdensome repayment options.[4]

---

**3.** Besides redemption or reaffirmation, a debtor also has the options of challenging the creditor's secured standing or simply surrender the collateral. *See In re Bushey,* 204 B.R. 661, 663 (Bankr.N.D.N.Y.1997). In addition, in this circuit, a debtor who has not defaulted on her security obligations may retain the property and remain current on her payments. *See Boodrow,* 126 F.3d 43.

**4.** In this respect, reaffirmation agreements are somewhat inconsistent with the purposes of Chapter 7. *See In re Pendlebury,* 94 B.R. 120, 125–26 (Bankr.E.D.Tenn.1988); *see also* H.R.Rep. No. 95–595, at 133–34 ("[A]n exception to discharge is contrary to the two most important principles of the bankruptcy laws: a fresh start for the debtor, and equality of treatment for all debts and creditors."), *reprinted in* 1978 U.S.C.C.A.N. at 6094–95.

*See* 11 U.S.C. § 524(c). This option may be attractive to the debtor for several reasons. If she cannot afford redemption, as many bankruptcy debtors cannot, reaffirmation may be the only way for her to keep necessary property which would otherwise be extremely costly to replace. *See Cox v. Zale Del., Inc.*, 239 F.3d 910, 912–13 (7th Cir.2001) (Posner, J.). If she is a skilled negotiator, she might obtain a renegotiated lien with more favorable terms. *See Boodrow*, 126 F.3d at 52. Finally, reaffirmation may help reestablish her good credit standing after the bankruptcy discharge. *See id.* at 52.

The secured creditor might also value reaffirmation. In the absence of redemption or reaffirmation, the debtor's personal debt is extinguished and the creditor is left with *in rem* proceedings as its only recourse. *See id.* at 52. Repossession and foreclosure can be costly endeavors for a creditor. *See Cox*, 239 F.3d at 912; *In re Pendlebury*, 94 B.R. 120, 125 (Bankr. E.D.Tenn.1988). Moreover, resale may be unattractive where the collateral's value depreciates quickly. *See Pendlebury*, 94 B.R. at 125. For these reasons, most creditors realize that reaffirmation is a more favorable option than foreclosure. *See id.* at 125.

■ Reaffirmed terms are a matter of negotiation and subject to the creditor's approval. *See Boodrow*, 126 F.3d at 49; *In re Bushey*, 204 B.R. 661, 662–63 (Bankr.N.D.N.Y.1997). Because bankruptcy negotiations ordinarily involve disparate bargaining power between the debtor and creditor, courts have suggested that reaffirmation gives the creditor an effective veto on the debtor's ability to keep much-needed property if the debtor does not accede to the creditor's reaffirmation demands. *See Boodrow*, 126 F.3d at 51; *cf.* H.R.Rep. No. 95–595, at 127 ("In consumer cases, very often a secured cred-

itor with a security interest in all of the debtor's property, including household and personal goods, uses the threat of foreclosure to obtain a reaffirmation of a debt. Otherwise, the secured creditor is able to deprive a debtor of even the most insignificant household effects, ... even though the items have little if any realizable market value. However, the goods do have a high replacement cost, and thus the creditor is able to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess."), *reprinted in* 1978 U.S.C.C.A.N. at 6088. *But see Pendlebury*, 94 B.R. at 125 (suggesting that the debtor has considerable bargaining power in the reaffirmation process).

Perhaps realizing this danger to the debtor's fresh start, Congress imposed on reaffirmation agreements several preconditions to their enforceability. *See Cox*, 239 F.3d at 912. The reaffirmation agreement must advise the debtor that he is not obligated to reaffirm and that the agreement may be rescinded. *See* 11 U.S.C. § 524(c)(2). It must be filed with the court, *see id.* § 524(c)(3), which, if the debtor is pro se, must apprise her of reaffirmation implications and obligations, *see id.* § 524(d). Finally, any reaffirmation agreement must be approved either by the debtor's counsel, or, if the debtor is pro se, by the court. *See id.* §§ 524(c)(3), (c)(6).

Recognizing that reaffirmation obligations, even with the protections afforded by the Bankruptcy Code, may not sufficiently ensure the debtor's fresh start, *see* H.R.Rep. No. 95–595, at 163, *reprinted in* 1978 U.S.C.C.A.N. at 6124; S.Rep. No. 95–989, at 7 (July 14, 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5793, Congress "substantial[ly] change[d]" the Bankruptcy Code in 1978 to create the new right of redemption, *see* S.Rep. No. 95–989, at 95, *reprinted in* 1978 U.S.C.C.A.N. at 5881.

■ Redemption agreements are completely different from reaffirmation agreements. Unlike reaffirmation terms, the redemption price is not subject to negotiation. Rather, the Bankruptcy Code specifies that the debtor must pay the creditor the amount of the allowed secured claim. *See* 11 U.S.C. § 722. That amount is further defined as the lesser of the unpaid balance of the claim or the value of the collateral.[5] *See id.* § 506(a); *In re Hart,* 8 B.R. 1020, 1022 n. 2 (N.D.N.Y.1981). Although some debtors have attempted to redeem by installment, the majority of courts require redemption by lump-sum payment. *See, e.g., In re Schweitzer,* 19 B.R. 860 (Bankr.E.D.N.Y.1982); *Hart,* 8 B.R. at 1022; *In re Bell,* 700 F.2d 1053, 1055 (6th Cir.1983).

■ Whereas reaffirmation is subject to creditor approval, redemption is the debtor's right; she may compel the creditor to enter into a redemption agreement if the agreement complies with the applicable statutory provisions. The redemption requirements are much less rigorous than the reaffirmation requirements. Redemption applies only to property which is either abandoned or exempt, which is for personal, family, or household use, and which is subject to a dischargeable consumer debt. *See* 11 U.S.C. § 722. Outside these prerequisites, the statute on its face requires little more than the debtor's check for the appropriate amount. If she can afford it, redemption is probably the debtor's most attractive option for retaining personal property because she keeps possession of the property free and clear of any debt. *See Pendlebury,* 94 B.R. at 122.

## III

Court approval of redemption agreements is not mentioned in the Bankruptcy Code. Nevertheless, Judge Swain held the redemption agreement between Sears and Spivey null and void absent court approval. *See Spivey,* 230 B.R. at 491. In reaching her conclusion, Judge Swain looked to the statutory preconditions to proper redemption: the property must be either exempt or abandoned, it must be for personal, family, or household use, and it must be subject to a dischargeable consumer debt. Reasoning that judicial oversight was necessary to ensure compliance with these preconditions, Judge Swain concluded that § 722 contemplates judicial review of redemption agreements. *See id.* at 489. Otherwise, she reasoned, "unscrupulous or uninformed parties [could] enter[ ] into agreements purporting to redeem property that is not eligible for such treatment under section 722." *Id.* Judge Swain also noted that the redemption payment amount was not subject to negotiation but rather defined by § 506(a). Because valuations developed by the parties might not equate with the statutorily-defined amount, she concluded that judicial review of the amount was necessary. *See id.*

Comparing redemption to reaffirmation, Judge Swain then concluded that creditor abuses in the redemption context could be as pervasive as in the reaffirmation context. Under both, the creditor has the powerful leverage of repossessing property that the debtor is likely to value highly, even though the actual resale value of the

5. The "value of the collateral" option is subject to some debate. Some creditors argue that the value is represented by the replacement valuation developed by *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). However, most courts hold that the redemption price is the liquidation value: what the creditor would recover if it repossessed and resold the collateral. *See, e.g., In re Weathington,* 254 B.R. 895, 899 (6th Cir.BAP2000); *In re Tripplett,* 256 B.R. 594 (Bankr.N.D.Ill.2000).

collateral is low. Thus, Judge Swain continued, "[a]n unscrupulous creditor could, by asserting that it has a valid security interest and threatening a debtor with repossession, obtain a redemption payment to which it is not entitled. Or, a creditor with a valid security interest could propose to an uninformed debtor a redemption price much higher than the actual value of the collateral." *Id.* at 490. Accordingly, she held that "Rule 6008 of the Federal Rules of Bankruptcy Procedure *requires* that the debtor file a motion in order to effectuate a redemption." *Id.* at 491 (emphasis added). At least three other courts have held similarly. *See In re Ephraim,* 249 B.R. 862 (Bankr.E.D.Mich.2000); *In re White,* 231 B.R. 551 (Bankr.D.Vt.1999); *In re Lopez,* 224 B.R. 439 (Bankr.C.D.Cal. 1998).

Sears argues that Judge Swain's decision misconstrued § 722 and Rule 6008. In Sears' view, neither of these provisions requires judicial approval of redemption agreements. In fact, Sears argues, a bankruptcy court can only exercise jurisdiction over a consensual redemption agreement when the parties dispute the valuation of the collateral.

Surprisingly, Spivey does not directly oppose Sears' arguments. Instead, Spivey argues that Sears has mispresented the question for review. The only appropriate question, Spivey claims, is whether Judge Swain erred in negating the redemption agreement in this case. In other words, Spivey contends, even if neither the Bankruptcy Code nor Rules requires judicial approval of consensual redemption agreements, they do not forbid bankruptcy courts from rejecting consensual agreements, either. In the absence of a statutory mandate, Spivey submits, § 105 and Rule 9029 give bankruptcy courts discretionary power to manage their proceedings, and therefore if this court were to find that the bankruptcy court was within its discretion in issuing the decision below, the decision must be affirmed.

In reply, Sears argues that when the statutory import is clear, bankruptcy courts have no power to circumvent it. In the case of redemption agreements, Sears takes the position that the Code and Rules affirmatively prohibit bankruptcy courts from requiring judicial approval.

## IV

Federal district courts have appellate jurisdiction over bankruptcy appeals. *See* 28 U.S.C. § 158(a); *In re AroChem Corp.,* 176 F.3d 610, 618 (2d Cir.1999). The district court has the power to "affirm, modify, or reverse" all or part of a bankruptcy court's order, "or remand with instructions." Fed. R. Bankr.P. 8013. Conclusions of law are reviewed de novo but factual resolutions are entitled to deference. *See id.* ("Findings of fact ... shall not be set aside unless clearly erroneous ...."); *AroChem,* 176 F.3d at 620.

Bankruptcy courts have discretion in a number of matters. *See, e.g., In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir.1990) (discretion to lift the automatic stay); *In re Blaise,* 219 B.R. 946, 949–50 (2d Cir. BAP 1998) (discretion to convert a Chapter 13 case into a Chapter 7 case). Matters of discretion are reviewed for abuse of discretion. *See Boodrow,* 126 F.3d at 47; *Blaise,* 219 B.R. at 950. A bankruptcy court abuses its discretion when it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *See Blaise,* 219 B.R. at 950 (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). A bankruptcy court also abuses its discretion if it commits a clear error of judgment. *See id.*

## V

Section 722 of the Bankruptcy Code states: "An individual debtor may ... redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien." 11 U.S.C. § 722. Rule 6008 of the Federal Rules of Bankruptcy Procedure provides: "On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with applicable law." Fed. R. Bankr.P. 6008.

### A

 The task of resolving a dispute over the meaning of Bankruptcy Code and Rule provisions must begin with the language of the provisions. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). A literal reading of the textual provisions at issue does not mandate court approval. Section 722 curtly describes how a debtor must redeem appropriate property; nowhere does it mention court scrutiny. Rule 6008 does mention "authoriz[ation]" by the court. However, by its terms Rule 6008 only gives instruction af-

ter a particular party has made a motion. Rule 6008 is inapplicable in the absence of such a motion. There is nothing in either provision that expressly requires a motion for approval of a consensual redemption agreement, nor is there any indication that court approval is necessary in the absence of such a motion. The most natural reading of these two provisions, taken together, is that a debtor and creditor may cement a consensual redemption pursuant to the requirements in § 722 without having to resort to court action. If the debtor wishes to try to force the creditor into a redemption arrangement, she may make a motion pursuant to Rule 6008, at which point the court may compel redemption.

I recognize that § 722 and Rule 6008 admit a second plausible reading of the texts: § 722 sets forth the requirements for and Rule 6008 sets forth mandatory procedural preconditions to a completed, enforceable redemption agreement. Although it does not say so explicitly, Rule 6008 could be read as requiring both a motion and judicial authorization before any redemption agreement can take effect.[6] However, analyzing § 722 and Rule 6008 in the context of other bankruptcy provisions convinces me that the former reading is the correct one. *Cf. Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) ("[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and poli-

---

**6.** Rule 9019(a), worded similarly to Rule 6008, provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr.P. 9019(a). Courts are split on whether the language of Rule 9019 by itself can require both a motion and judicial approval as preconditions to settlement. *Compare In re Signet Indus., Inc.*, 165 F.3d 28 (table), 1998 WL 639168, at *3 (6th Cir. Sept.10, 1998) (holding, in an unpublished

opinion, that the language of Rule 9019 requires a motion and judicial approval), *and In re Masters, Inc.*, 149 B.R. 289, 292 (E.D.N.Y. 1992) (holding Rule 9019 requires a motion and judicial approval), *with Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 351 n. 4 (3d Cir.1999) (holding that Rule 9019 cannot mandate court approval where the Bankruptcy Code does not also mandate it, but finding the requirement in § 363).

cy.") (internal quotations and citations omitted); *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506–07, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (considering statutory context); *Boodrow*, 126 F.3d at 49.

### 1

A comparison to the reaffirmation agreement provisions bolsters the reading that neither § 722 nor Rule 6008 requires court approval absent a motion. Congress protected pro se debtors from being steamrolled into unfavorable reaffirmation agreements by explicitly conditioning them on court approval. *See* 11 U.S.C. § 524(c)(6); *see also* S. Rep. 95–989, at 81, *reprinted in* 1978 U.S.C.C.A.N. at 5867. Yet Congress was content to withhold that requirement when the debtor's own counsel approved of the agreement.[7] *See* 11 U.S.C. § 524(c)(3).

This facet of reaffirmation agreements is illuminating in two respects. First, it indicates that Congress could certainly impose the requirement of court approval where it saw fit to do so. That Congress failed to include a similar express provision mandating court approval in the redemption context implies that court approval of redemption agreements is not, in fact, a necessity there.

Second, it would be odd indeed for Congress to require judicial approval of a redemption agreement for a debtor, such as Spivey, represented by counsel, when Congress eliminated that requirement in the reaffirmation context, an option viewed as much more likely to disadvantage the debtor. As explained above, reaffirmation agreements consign the debtor to personal liability on the debt. And because they are subject to creditor consent, reaffirmation agreements are seen as the creditor's playthings. Despite these concerns, Congress did not impose mandatory court approval of reaffirmation agreements when the debtor was represented by counsel, presumably because an attorney would be an adequate safeguard. Unlike reaffirmation agreements, redemption agreements release the debtor from personal liability and are usually on terms more favorable to the debtor. For these reasons, redemption agreements are generally viewed as less hazardous for debtors. Inferring a congressional mandate of court approval for redemption agreements under these circumstances would be incongruous with the nature and scope of redemption and reaffirmation.

In fact, the legislative history supports the inference that Congress did not mean to impose the requirement of judicial approval on redemption agreements. Both Houses were expressly concerned with court approval of reaffirmation agreements. *See* S.Rep. No. 95–989, at 81 (stating definitively that a reaffirmation "must be entered into in good faith and must be approved by the court"), *reprinted in* 1978 U.S.C.C.A.N. at 5867; H.R.Rep. No. 95–595, at 366 (same), *reprinted in* 1978 U.S.C.C.A.N. at 6322. The legislative record evinces no similar concern in the redemption context. *Compare* S.Rep. No. 95–989, at 95 (expressing concern that the *creditor's* rights might be prejudiced by depreciation and nowhere indicating a need for court approval), *reprinted in* 1978 U.S.C.C.A.N. at 5881; H.R.Rep. No. 95–

---

7. Congress imposed the requirement of court approval only when the secured collateral is not real property. *See* 11 U.S.C. § 524(d)(2). At least one court confronted with a consensual reaffirmation agreement for real property has abstained from intervening, even when the debtor is pro se. *See In re Phelan,* 257 B.R. 776, 777–78 (Bankr.E.D.Va.2000). The court did, however, recognize its discretionary power to mandate court supervision. *See id.* at 778.

595, at 127–28, 380–81 (lacking any mention of court approval), *reprinted in* 1978 U.S.C.C.A.N. at 6088–89, 6336–37. These reasons support the interpretation that neither § 722 nor Rule 6008 requires judicial approval of consensual redemption agreements.

### 2

A different contextual analysis seems, at first glance, to support the reading that § 722 contemplates judicial scrutiny of redemption agreements. Section 722 restricts redemption in three ways: (1) the property must be tangible, personal property, secured by a consumer debt and intended primarily for personal, family, or household use; (2) the property must be either exempted or abandoned; and (3) the redemption price must be equal to the amount of the allowed secured claim. *See* 11 U.S.C. § 722. The mere existence of these specific statutory conditions of redemption suggests the need for a judicial chaperon to ensure compliance. Upon close scrutiny, however, I do not find court intervention so necessary that § 722 in essence implicitly requires it.

The Bankruptcy Code and Rules themselves rely heavily on the adversarial nature of the proceedings to bring incidences of noncompliance to the court's attention. And, in the absence of a dispute, the parties' consensual view generally prevails. For example, a creditor's claim which has been properly and timely filed is deemed allowed absent objection. *See* 11 U.S.C. § 502(a); *In re Harrison*, 987 F.2d 677, 680 (10th Cir.1993). Similarly, property listed by the debtor as exempt is deemed exempt, even if improperly listed, unless a party or the trustee objects. *See* 11 U.S.C. § 522(1); *Taylor*, 503 U.S. at 643, 112 S.Ct. 1644. Property is deemed abandoned if the trustee fails to administer it, unless the court orders otherwise. *See* 11 U.S.C. § 554(c). In these specific examples, Congress has seen fit to permit allowance, exemption, and abandonment to take effect by consent of the parties and without judicial oversight. They evince Congress' overarching desire to curtail extraneous judicial supervision absent adversarial disputes.[8] *See* H.R.Rep. No. 95–595, at 4 ("The bill removes many of the supervisory functions from the judge in the first instance, transfers most of them to the trustee and to the United States trustee, and involves the judge only when a dispute arises. Because the judge no longer will have to take an active rule in managing bankruptcy cases, the bankruptcy court should become a forum that is fair in fact and in appearance as well."), *reprinted in* 1978 U.S.C.C.A.N. at 5966;

---

8. In the related context of the statutory definition of the phrase "after notice and a hearing," *see* 11 U.S.C. § 102(1), Congress has stated: "The phrase means after such notice as is appropriate in the particular circumstances (to be prescribed by either the Rules of Bankruptcy Procedure or by the court in individual circumstances that the Rules do not cover ...), and such opportunity for a hearing as is appropriate in the particular circumstances. Thus, a hearing will not be necessary in every instance. If there is no objection to the proposed action, the action may go ahead without court action. This is a significant change from present law, which requires the affirmative approval of the bankruptcy judge for almost every action. The change will permit the bankruptcy judge to stay removed from the administration of the bankruptcy or reorganization case, and to become involved only when there is a dispute about a proposed action, that is, only when there is an objection," S.Rep. No. 95–989, at 27–28, *reprinted in* 1978 U.S.C.C.A.N. at 5813; H.R.Rep. No. 95–595, at 315, *reprinted in* 1978 U.S.C.C.A.N. at 6272; *see also* H.R.Rep. No. 95–595, at 108 ("This concept, embodied in the phrase 'after notice and a hearing', will free the judge from ruling on the many undisputed administrative decisions that must be made in a case, and will involve the judge only when there is an actual dispute to be resolved."), *reprinted in* 1978 U.S.C.C.A.N. at 6069.

H.R.Rep. No. 95–595, at 107–08 ("The judges will become passive arbiters of disputes that arise in bankruptcy cases.... If an objection to the proposed action [of the trustee] is not made, then the trustee may proceed with the same authority as if he had obtained a court order authorizing the action. If an objection is made, the court will hear the dispute ...."), *reprinted in* 1978 U.S.C.C.A.N. at 6069.

Moreover, the bankruptcy provisions impose duties on the debtor and trustee to bring discrepancies to the attention of the court and interested parties. The trustee has affirmative, mandatory, duties to "ensure that the debtor ... perform his intention [to redeem property]," 11 U.S.C. § 704(3), to "investigate the financial affairs of the debtor," *id.* § 704(4), and to "examine proofs of claims and object to the allowance of any claim that is improper," *id.* § 704(5). In addition, the trustee has duties of keeping records, making reports, and giving notice of the case to creditors. *See id.* § 704(7)-(9); Fed. R. Bankr.P. 2015(a). These duties put him in a fiduciary relationship with the debtor and the creditors. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *In re Dinova*, 212 B.R. 437 (2d Cir. BAP 1997); *see also* H.R.Rep. No. 95–595, at 88 ("The proposed United States trustees will be the repository of many of the administrative functions now performed by bankruptcy judges, and will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."), *reprinted in* 1978 U.S.C.C.A.N. at 6049; H.R.Rep. No. 95–595, at 107 ("The bill gives him adequate powers to accomplish what must be done, and relieves him of the necessity for applying to the court and receiving court approval for every action he proposes to take."), *reprinted in* 1978 U.S.C.C.A.N. at 6069. The debtor has the affirmative duty to engage in good-faith "cooperat[ion] with the trustee." Fed. R. Bankr.P. 4002(4); *accord In re Hines*, 69 F.2d 52, 53 (2d Cir.1934) (directing a debtor to assist the trustee in the administration). There are, therefore, at least five individuals—the debtor, the debtor's attorney, the creditor, the creditor's attorney, and the trustee—scouring any given agreement and the status of the subject property who can bring anomalies or disputes to the court's attention.

I recognize the possibility that parties may attempt to redeem property which was never exempted or abandoned in the first place. Or, perhaps, the property or redemption price does not comply with the other redemption conditions. I also share Judge Swain's concern that such noncompliance may elude judicial scrutiny by one party's misrepresentations or by the parties' consensual subversion of the conditions. Nevertheless, the Bankruptcy Code and Rules are not toothless. Debtors and their attorneys face severe penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. *See, e.g.*, 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases); 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Fed. R. Bankr.P. 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); *id.* 1017(e) (permitting a bankruptcy court to dismiss a Chapter 7 case for the debtor's substantial abuse of the proceedings); *id.* 9011(c) (authorizing a broad range of appropriate sanctions for misrepresentations); *id.* 9020(a)-(b) (codifying the inherent contempt power of bankruptcy courts). In addition, bankruptcy courts have the power to sua sponte craft measures to ensure

compliance with the rules and procedures.[9] *See Bushey,* 204 B.R. at 664 (noting the power under § 105 but declining to exercise it); *Cox,* 239 F.3d at 916–17 (asserting that civil contempt, and perhaps even criminal contempt, is conferred by Rule 9020(b) and § 105); *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 445, 447 (1st Cir.2000) (holding § 105(a) broad enough to permit courts to fashion a broad array of remedies, including monetary relief, actual damages, disgorgement, attorney's fees, punitive damages, and contempt sanctions, for violations of non-complying reaffirmation agreements), *cert. denied,* — U.S. —, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001). Finally, as amicus The Retail Council points out, the Bankruptcy Code authorizes compensatory and punitive damages to be assessed against creditors who engage in threatening or abusive tactics against the debtor or his property. *See* 11 U.S.C. § 362(h).

In short, the adversarial system provides strong justification for judicial passivity, and the bankruptcy provisions give courts vast power to remedy consensual or bad faith violations. Suffice it to say that I find that these forces substantially weaken the conclusion that the text of § 722 compels judicial scrutiny of redemption agreements. When measured against the reaffirmation comparison and the more natural reading of the language of § 722 and Rule 6008, the conclusion that they require judicial approval of redemption agreements cannot stand.

### B

■ Policy ramifications stand opposed to this textually-based interpretation.

Courts and commentators have suggested that judicial oversight is important to prevent creditors from terrorizing a debtor into disadvantageous redemption agreements with empty threats of repossession. *See, e.g., White,* 231 B.R. at 555–56 & n. 12; *Spivey,* 230 B.R. at 490; David A. Scholl, Article, *"All the Small Things": How the Bankruptcy Courts are and should be Handling the Many Little Reaffirmation and Like Matters Before Them,* 10 Temp. Pol. & Civ. Rts. L.Rev. 83, 100–01 (2000). I am sympathetic to this view. No doubt unscrupulous creditors have attempted to take advantage of unsuspecting and ignorant debtors. Although I question, in light of the considerations mentioned above, how prevalent such venality is in practice, *see* Scholl, *supra,* at 99 ("The survey results show that a significant number of judges never have had any such [redemption] matters come before them. I also note the added comments of many other judges commenting upon the rarity of such matters."), it certainly seems, in theory at least, a real possibility. Nevertheless, it is not for the courts, in the name of debtor protection, to wrest from legislative pronouncements mandates which do not appear there.[10] *Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 13–14, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts."); *Bell,* 225 F.3d at 220–22 (rejecting similar policy arguments as unpersuasive in light of the textual meaning of the bankruptcy provisions at issue). Accordingly, I hold that, absent a motion pursu-

---

**9.** A bankruptcy court's discretionary powers are discussed in more detail *infra* in Part VI.

**10.** In light of my conclusion, discussed *infra* in the following section, that bankruptcy courts can address this policy consideration via their own discretionary powers, the support for the argument that the textual provisions specifically mandate judicial scrutiny is even weaker.

ant to Rule 6008,[11] consensual redemption agreements do not require court approval.

## VI

■ That I disagree with Judge Swain on this point of statutory construction does not, however, end the inquiry. Just because a statute does not require judicial action does not also render it prohibited. Spivey urges that nothing in the statutes prevented Judge Swain from voiding the redemption agreement, and that in the absence of statutory authority, Judge Swain was well within her discretion to act as she did. Sears, of course, argues that once Spivey made payment, redemption occurred, and the court was powerless to intervene.

Spivey holds the stronger argument here. By my reading of § 722 and Rule 6008, nothing prohibits a bankruptcy court from conditioning consensual redemption agreements on court approval. Section 722 states that "[a]n individual debtor may ... redeem tangible personal property ... by paying the [creditor] the amount of the allowed secured claim." 11 U.S.C. § 722. Admittedly, the language does initially suggest, as Sears advocates, that redemption is completed upon payment. *Cf.* H.R.Rep. No. 95–595, at 381 ("The redemption is accomplished by paying the holder of the lien ...."), *reprinted in* 1978 U.S.C.C.A.N. at 6337. But nothing in the text purports to affirmatively tie a court's hands with respect to redemptions. Section 722 does not unequivocally strip the

court of authority by stating: "The court may intervene only if the parties object," or "Unless a motion to approve is made, property complying with this section becomes redeemed," or something to that effect, like other sections of the Bankruptcy Code which explicitly limit the court's power.[12] *Cf.* Fed. R. Bankr.P. 9006(b)(3) ("The court may enlarge the time for taking action under [certain Rules] *only to the extent and under the conditions stated* in those rules.") (emphasis added); 11 U.S.C. § 522(1) ("*Unless a party in interest objects,* the property claimed as exempt ... *is* exempt.") (emphases added). There is no reason to suppose that § 722 mandates anything other than the normal prescription for redemption agreements, judicial approval or rejection notwithstanding.

■ Sears' argument is really only tenable if, as a general matter, bankruptcy courts may act only when the Bankruptcy Code or Rules authorize them to do so. The Second Circuit, however, has taken the opposite view, construing the express provisions of the Bankruptcy Code not as authority to act but as limits on otherwise broad discretion. *See Boodrow,* 126 F.3d at 53 (holding that the Code does not prohibit a bankruptcy court from permitting a debtor to retain collateral if the secured obligations are current); *see also FDIC v. Colonial Realty Co.,* 966 F.2d 57, 58 (2d Cir.1992) ("Because we discern neither in the Bankruptcy Code nor in the principles of equity which are the foundation of the Code any prohibition against

---

11. I make no comment on the role or powers of the court once a motion pursuant to Rule 6008 has been made.

12. Nor is there any basis for inferring a limitation on the court's power from the permissive language of Rule 6008. The Rule could have explicitly restricted the court's ability to oversee redemption agreements by leading with the phrase "Only on motion," a phrase

used to limit judicial power in other Rules. *See, e.g.,* Fed. R. Bankr.P. 1007(a)(4) ("Any extension of time for the filing of the lists required by this subdivision may be granted *only on motion* for cause shown ...."); *id.* 1007(c) ("Any extension of time for the filing of the schedules and statements may be granted *only on motion* for cause shown ...."). Rule 6008 is not so restricted.

such [action by the bankruptcy court], we affirm ...."). Thus, if the provisions do not prohibit a bankruptcy court's action, the court has discretion to act.

The Second Circuit's position is supported by the unenumerated inherent equitable powers of bankruptcy courts; by § 105, which bestows on bankruptcy courts certain discretionary powers; and by Rule 9029, which gives bankruptcy courts the power to set and enforce local rules. A brief discussion of each is instructive.

 "[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Hunt,* 292 U.S. at 240, 54 S.Ct. 695; *accord In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 (2d Cir.1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *In re Pottasch Bros., Co.,* 79 F.2d 613, 616 (2d Cir.1935) (Learned Hand, J.) (proclaiming that a bankruptcy court has "the ancient and elementary power" of amending prior orders); H.R.Rep. No. 95–595, at 13 ("The bill contemplates that the new bankruptcy courts will have contempt power commensurate with their responsibilities, and equal to the contempt power of other Federal courts ...."), *reprinted in* 1978 U.S.C.C.A.N. at 5974. This does not mean that bankruptcy courts may depart from established rules at whim. They may act only when not in contravention of the Bankruptcy Code and Rules. *See Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 24–25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Within the prescribed parameters, howev-

er, courts have wielded their inherent power with considerable force. *See, e.g., In re Simon,* 297 F. 942 (2d Cir.1924) (denying a discharge for the debtor's intentional failure to comply with Rule 4002 duties); *In re Ishahak,* 130 B.R. 16, 20 (Bankr. E.D.N.Y.1991) (same); *In re Howard,* 55 B.R. 580, 583 (Bankr.E.D.N.C.1985) (same); *In re Country Woods Estates, Inc.,* 3 B.R. 721, 722 (E.D.N.Y.1980) (holding that a bankruptcy court has the discretion to allow a defective verification to be cured by amendment); *cf. Link v. Wabash R. Co.,* 370 U.S. 626, 630–33, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (holding that district courts have the inherent discretionary power to sua sponte dismiss cases for failure to prosecute, even though the language of Rule 41(b) of the Federal Rules of Civil Procedure contemplates a motion).

 Section 105 of the Bankruptcy Code[13] bestows on bankruptcy courts a specific equitable power to act in accordance with principles of justice and fairness. Bankruptcy courts have broad latitude in exercising this power. *See Momentum Mfg.,* 25 F.3d at 1136 ("Section 105(a) should be construed liberally to enjoin [actions] that might impede the reorganization process.") (internal quotation marks omitted); *Bushey,* 204 B.R. at 664 (noting broad power under § 105 but declining to exercise it); *e.g., In re 183 Lorraine St. Assocs.,* 198 B.R. 16, 33 (E.D.N.Y.1996) (approving a sua sponte dismissal as a sanction under § 105); *Cox,* 239 F.3d at 916–17 (asserting that civil contempt, and perhaps even criminal contempt, is conferred by Rule

---

**13.** Section 105 permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

9020(b) and § 105); *Bessette*, 230 F.3d at 446 (holding § 105 empowers bankruptcy courts to entertain class actions); *Morgan*, 182 F.3d at 779 (holding that § 105(a) enables bankruptcy courts to toll the three-year priority period); *In re Gurney*, 192 B.R. 529, 537 (9th Cir. BAP 1996) (same); *In re Richards*, 994 F.2d 763, 765 (10th Cir.1993) (holding § 105(a) broad enough to suspend the 240–day assessment period); *Pendlebury*, 94 B.R. at 124 ("The court would not hesitate in appropriate circumstances to utilize its equitable powers and interject itself into the reaffirmation process."). As with their inherent powers, courts may exercise § 105 powers only "within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *accord In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990) ("The bankruptcy court's equitable powers cannot be exercised in derogation of other sections of the Bankruptcy Code."), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n. 1 (6th Cir.2000) ("Section 105 undoubtedly vests bankruptcy courts with statutory contempt powers, but it 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law.'") (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). Courts have interpreted § 105(a) to authorize sua sponte actions pursuant to a provision when the literal terms of the provision only explicitly contemplate judicial action after a motion. *See, e.g., In re Duratech Indus., Inc.*, 241 B.R. 283, 287 (E.D.N.Y.1999) (approving sua sponte action under § 305(a) and § 105(a)).

■ Rule 9029 provides: "A judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, Official Forms, or the local rules of the district unless the alleged violator has been furnished in the particular case with actual notice of the requirement." Fed. R. Bankr.P. 9029(b). Under this "direct analog" of Rule 83 of the Federal Rules of Civil Procedure, *see* Sears' Reply Br. at 12 n. 8; *accord* Fed. R. Bankr.P. 9029 Advisory Comm. Note; *see also In re Spielfogel*, 237 B.R. 555, 561 (E.D.N.Y.1999) (Spatt, J.) (applying Rule 83 standards to bankruptcy court local rules), bankruptcy courts have the power to enact local rules governing their practice, procedure, and conduct, *see Somlyo v. J. Lu–Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir.1991). The local rules have the force of law to the extent that they do not conflict with higher authority. *See id.* Because they are designed to ensure the efficient and expedient execution of justice, they invariably affect litigants' claims and rights. *See id.* at 1048; *see also In re Ludwick*, 185 B.R. 238, 245–47 (Bankr.W.D.Mich.1995) (exercising power under the local bankruptcy rules to suspend an attorney from practice for the attorney's constant dishonesty). For example, the Bankruptcy Court for the District of Vermont, in response to an increasing number of redemption agreements, has issued a standing local rule that requires redemption agreements to be filed with the court. *See White*, 231 B.R. at 552 n. 5 (citing Gen. Order No. 98–01).

■ These three digressions explain how a bankruptcy court may act even when not expressly authorized to do so. As long as the act is not in derogation of the clear directives of the Bankruptcy

Code or Rules, judges have discretion to set parameters and issue orders for the efficient dispensation of justice and equity. Under this aegis, and because neither § 722 nor Rule 6008 requires anything to the contrary. I conclude that a bankruptcy court has the power, in appropriate circumstances, to require judicial approval of a redemption agreement.

### VII

 Having concluded that bankruptcy courts are neither required to approve, nor prohibited per se from disapproving, consensual redemption agreements like the one entered into by Sears and Spivey, I must decide whether the court below was within the proper bounds of discretion. Judge Swain clearly held that "Rule 6008 of the Federal Rules of Bankruptcy Procedure *requires* that the debtor file a motion in order to effectuate a redemption." *Spivey*, 230 B.R. at 491 (emphasis added). Because no motion was filed, Judge Swain declined to rescind or modify the Bankruptcy Order nullifying the redemption agreement. *See id.* As I have stated, this view of the law is erroneous. Had Judge Swain ruled that judicial approval was warranted because Spivey's listing of Sears as an unsecured creditor called into question the propriety of the redemption agreement,[14] I might have held that the Bankruptcy Order was an appropriate exercise of judicial discretion. However, it is clear that Judge Swain relied on the mistaken view that the law required her to reject the agreement in the absence of a motion by the debtor. On this ground, the decision below cannot stand.

For the foregoing reasons, the order of October 15, 1998 is hereby VACATED and the matter is REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion.

SO ORDERED.

---

14. Sears claims that Spivey's debt of $439.00 was the purchase price of the TV and that it was subject to a purchase money security interest by virtue of the credit card transaction. In effect, Sears claims, Spivey erred when she listed Sears as an unsecured creditor. (Sears' Br. at 2–3 & nn. 3–4.)