OPINION
{¶ 1} Plaintiffs-appellants, Wesley and Wanda Rogers, appeal the decision of the Madison County Court of Common Pleas granting summary judgment in favor of defendant-appellee, The Huntington National Bank ("Huntington Bank"). We affirm the trial court's decision.
 {¶ 2} Appellants operate a small repair business out of their home in Madison County. In 1997, Huntington Bank extended two loans to appellants in amounts of $90,000 and $23,000. To secure the loans, the parties executed security agreements, which assigned security interests in appellants' business assets. Huntington Bank perfected its security interests in appellants' property by filing financing statements with the Ohio Secretary of State and the Madison County Recorder.
 {¶ 3} On December 3, 1999, appellants filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. On February 22, 2000, appellants and Huntington Bank entered into a reaffirmation agreement. Under the terms of the reaffirmation agreement, Huntington Bank permitted appellants to remain in possession of the business assets provided appellants reaffirmed their indebtedness to the extent of the fair market value of the business assets. According to the reaffirmation agreement, the parties agreed to reduce the amount of appellants' personal liability on the indebtedness from $82,757.16 to $21,015, and also agreed that appellants would continue making payments in monthly installments. Appellants provided Huntington Bank with a list of 152 items of business assets, including personal property and inventory, that were subject to its previous security agreements. At that time, appellants represented the value of the personal property to be $10,015 and the inventory to be approximately $1,000.
 {¶ 4} In May 2000, appellants received a bankruptcy discharge pursuant to Section 727, Title 11, U.S.Code. In May 2001 appellants' business assets were destroyed by fire. In compliance with the security agreements, appellants had insured the property with Central Mutual Insurance Company ("Central Mutual"), and had included Huntington Bank as a loss payee. Appellants notified Huntington Bank that they were to receive in excess of $130,000 in proceeds from the insurance policy.
 {¶ 5} On August 23, 2001, appellants presented a check in the amount of $17,867.18 to Huntington Bank, in an attempt to satisfy their personal obligation under the reaffirmation agreement. A Huntington Bank employee who was unfamiliar with this matter accepted the payment, and issued a receipt which stated that appellants' obligations were paid in full. However, Huntington Bank later rejected the check and returned it to appellants' bank without negotiating it.
 {¶ 6} On August 31, 2001, appellants submitted three proofs of loss to Central Mutual for a total of 802 items of property destroyed in the fire. Appellants estimated that the value of the items they possessed at the time of the Chapter 7 filing was $132,750. Central Mutual issued a $10,000 advance on the proceeds to appellants, and later issued four checks to appellants and Huntington Bank jointly, for $71,751, for a total of $81,751.
 {¶ 7} On September 25, 2001, Huntington Bank attempted to reopen appellants' bankruptcy case, but the U.S. Bankruptcy Court denied the motion. Appellants then filed a complaint against Huntington Bank in the Madison County Court of Common Pleas, seeking a declaration that their obligations pursuant to the reaffirmation agreement had been satisfied when they tendered the check to Huntington Bank on August 23, 2001. Appellants also sought damages for tortious interference with contract, slander of title, bad faith, and intentional infliction of emotional distress. Huntington Bank then removed the action to the U.S. District Court pursuant to Sections 1452 and 1334, Title 28, U.S.Code. Appellants then moved to remand in the District Court, and the Court remanded the case to the Madison County Court of Common Pleas.
 {¶ 8} On August 4, 2003, Huntington Bank moved for summary judgment, seeking the following: 1) a declaration that its security interest in all of appellants' personal property remains a valid and subsisting lien on the property; 2) a declaration that its security interest extends to the proceeds from the insurance policy issued by Central Mutual; and 3) a declaration that appellants' tender of the check on August 23, 2001 did not constitute an accord and satisfaction of the dispute with appellants.
 {¶ 9} On December 8, 2003, the Madison County Court of Common Pleas found no genuine issues of material fact in relation to the areas in which Huntington Bank sought summary judgment, and held that Huntington Bank was entitled to summary judgment on each of these issues. Appellants appeal the trial court's decision, raising seven assignments of error. For the purpose of clarity, we will discuss some assignments of error out of order, and we will address some assignments of error together.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The court erred to the prejudice of appellants in misapplying the Johnson decision."
 {¶ 12} Assignment of Error No. 6:
 {¶ 13} "The trial court failed to recognize the Difference between a secured interest and a debt obligation."
 {¶ 14} Appellants argue that the trial court grossly misapplied the United States Supreme Court's decision in Johnsonv. Home State Bank (1991) 501 U.S. 78, 111 S.Ct. 2150. Appellants maintain that Johnson is inapplicable to this case, and that the trial court erred in relying on it in granting summary judgment in favor of Huntington Bank.
 {¶ 15} Our review of the trial court's summary judgment decision is de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Civ.R. 56(C) provides that summary judgment is appropriate where "(1) [n]o genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. AppliedCompanies (1993), 67 Ohio St.3d 344, 346.
 {¶ 16} Where a motion for summary judgment is properly made and supported under Civ.R. 56(C), the nonmoving party may not rest upon its pleadings, but instead must produce evidence showing a genuine issue of fact as to issues upon which it has the burden of proof. Dresher v. Burt, 75 Ohio St.3d 280, 287,1996-Ohio-107.
 {¶ 17} In this case, appellants filed a petition for relief under Chapter 7 of the Bankruptcy Code, Sections 701-784, Title 11, U.S.Code. Under Section 727, Title 11, U.S. Code, a debtor can protect himself from personal liability on his debts by obtaining a discharge in a Chapter 7 liquidation. In re Krohn (C.A.6, 1989), 886 F.2d 123. Chapter 7 bankruptcy is designed to give the debtor a fresh start by expunging his debts, while enabling creditors to maximize their return through the liquidation of his assets. See Lines v. Frederick (1970), 400 U.S. 18,91 S.Ct. 113; Local Loan Co. v. Hunt (1934), 292 U.S. 234, 54 S.Ct. 695.
 {¶ 18} A debtor may exempt from bankruptcy particular items of personal property needed to facilitate a fresh start. See Section, 522(b), Title 11, U.S.Code; Owen v. Owen (1991),500 U.S. 305, 308, 111 S.Ct. 1833. Items that a debtor may claim as exempt include the debtor's interest in certain personal, family, or household goods. See Section 522(d)(3), Title 11, U.S.Code. Because a debtor retains ownership and possession of exempt property, a secured creditor's lien on the property remains unsatisfied. Sears, Roebuck, Co. v. Spivey (E.D.N.Y. 2001),265 B.R. 357, 361.
 {¶ 19} Even though a bankruptcy discharge eliminates the debtor's personal liability for the indebtedness, a discharge in bankruptcy does not dissolve a secured creditor's right to enforce his security interest. Dewsnup v. Timm (1992),502 U.S. 410, 418, 112 S.Ct. 773. A bankruptcy discharge extinguishes a creditor's right to enforce a claim in personam, but a creditor may still satisfy a claim against the debtor in rem. Johnson v.Home State Bank (1991), 501 U.S. 78, 84, 111 S.Ct. 2150. Although bankruptcy prevents actions against the debtor personally, it does not prevent in rem actions such as repossession or foreclosure to recover secured collateral.Sears, 265 B.R. at 361.
 {¶ 20} Appellant maintains that the trial court misapplied the Johnson decision because in that case, the debtor and creditor did not enter into a reaffirmation agreement. Section 524(c), Title 11, U.S. Code permits a debtor to enter into a voluntary agreement with a creditor to reassume the personal liability of a dischargeable debt. Such an agreement is known as a reaffirmation agreement.
 {¶ 21} A reaffirmation agreement is a contract between a debtor and a creditor that permits a debtor who cannot immediately pay a debt to retain possession of the collateral and make less burdensome payments on that property. See In reTurner (C.A.7, 1998), 156 F.3d 713, 715; Sears,265 B.R. at 361-362. Essentially, a reaffirmation agreement is a new contract that renegotiates or reaffirms a debtor's personal liability on the original debt. Section 524(c), Title 11, U.S.Code; In reTaylor (C.A.11, 1993), 3 F.3d 1512. A reaffirmation agreement is the only means by which a debtor's dischargeable personal liability on a debt may survive a Chapter 7 discharge. SeeTurner, 156 F.3d at 718.
 {¶ 22} Appellants argue, incorrectly, that when parties enter into a reaffirmation agreement, the creditor has no right to pursue its in rem rights in the collateral. In making this assertion, appellants rely on Sears, which provides: "[t]he Bankruptcy Code provides two methods by which a debtor may protect her exempt property against in rem actions: reaffirmation and redemption." 265 B.R. at 361.
 {¶ 23} If a debtor cannot afford redemption,[1]
reaffirmation may be the only manner in which the debtor can keep his property. See Cox v. Zale Del., Inc., (C.A.7, 2001),239 F.3d 910, 912-913. However, once a debtor elects to reaffirm debt, he "[is] bound as if he had never gone through with bankruptcy, and the creditor * * * [has] a right not only to pursue its collateral, but to pursue the debtor for any deficiency on its loan balance after credit for the value of the collateral." In re Turner, 156 F.3d at 717-718.
 {¶ 24} While a debtor's personal liability on an underlying debt may be discharged in bankruptcy, a lien created prior to bankruptcy to secure debt will survive a Chapter 7 discharge, and may be enforced by the secured creditor either following the automatic stay while the bankruptcy is still pending or after the bankruptcy case is closed. In re Geiger (E.D.Pa. 2001),260 B.R. 83. Therefore, when parties enter into a reaffirmation agreement, the creditor maintains its in rem rights in the collateral, even after the Chapter 7 discharge.
 {¶ 25} According to Section 524(c), Title 11, U.S. Code, "[a reaffirmation] agreement between a holder of a claim and the debtor, the consideration of which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law * * *." Further, in Rogers v. HuntingtonNational Bank (S.D.Ohio Sept. 9, 2002), Case No. C2-01-1050, the District Court, in determining that it must abstain from reopening the bankruptcy matter, recognized that:
 {¶ 26} "The state law issues raised in this proceeding substantially predominate. * * * [The] claims do in fact depend on the validity of the reaffirmation agreement entered into between the parties * * * [and] the validity of the reaffirmation agreement will necessarily depend on state law. * * * While the state law issues presented may not necessarily be `difficult' or `unsettled' this Court notes that there still remains an important state interest in hearing these state contract and tort claims."
 {¶ 27} We find that the trial court's reliance on Johnson
was indeed correct, as a reaffirmation agreement does not prevent a secured creditor from exercising its in rem rights in the secured collateral. However, state law issues are dispositive of this case, because state law is applied when interpreting reaffirmation agreements. See In re Schott (C.A.10, 2002),282 B.R. 1. Whether Huntington Bank is entitled to the proceeds of the insurance claim on the destroyed collateral depends on the validity of the reaffirmation agreement and the effect it has on the underlying security agreements between appellants and Huntington Bank, which are both matters of nonbankruptcy law. See Section 524(c), Title 11, U.S.Code.
 {¶ 28} According to R.C. 1309.308(A):
 {¶ 29} "[A] security interest is perfected if it has attached and all of the applicable requirements for perfection in sections1309.310 to 1309.316 of the Revised Code have been satisfied. A security interest is perfected when it attaches if the applicable requirements are satisfied before the security interest attaches."
 {¶ 30} R.C. 1309.203(A) provides that, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." Further, R.C. 1309.203(B) states that a security interest becomes enforceable against the debtor when: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. A security interest is perfected as to personal property such as equipment, fixtures, inventory, and the proceeds therefrom by filing a financing statement in accordance with R.C.1309.310.
 {¶ 31} An examination of the two security agreements between appellants and Huntington Bank reveals that in exchange for loans in amounts of $90,000 and $23,000, appellants pledged as collateral all of their equipment, fixtures, inventory, and receivables, and all cash proceeds, noncash proceeds, and insurance proceeds from that collateral. The security agreements required appellants to maintain insurance with respect to the collateral against risks of fire, and that all insurance proceeds be payable to both appellants and Huntington Bank.
 {¶ 32} The evidence further indicates that Huntington Bank filed a separate financing statement for each security agreement with the Ohio Secretary of State pursuant to R.C. 1309.501, and included in those financing statements, descriptions of the collateral sufficient to meet the requirements of R.C. 1309.108. In so doing, Huntington Bank perfected its security interest in the collateral described in the security agreements. See R.C.1309.310.
 {¶ 33} According to the record, on February 22, 2000, appellants and Huntington Bank entered into a reaffirmation agreement. This agreement provided that appellants reaffirmed their personal liability on the secured commercial obligation owed to Huntington Bank in the amount of $21,015. The reaffirmation agreement stated that, "[t]he obligations evidenced by the Notes described herein are secured by all business assets owned by [appellants] and more particularly described in Security Agreements dated January 3, 1997 and April 30, 1998 * * *." The reaffirmation agreement further provided that appellants would maintain insurance on the collateral until the reaffirmation agreement is terminated or performed in full.
 {¶ 34} The final clause of the reaffirmation agreement states:
 {¶ 35} "The execution, judicial review and approval of this Reaffirmation Agreement is not a novation, accord and satisfaction, or election of remedies, and is in no way a release, cancellation, or modification of any loan instrument described herein, or of any encumbrance against any collateral for the Indebtedness, or a release of or modification of the obligations of any guarantor hereon."
 {¶ 36} Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244. If the terms of a contract are ambiguous, the meaning of those terms is a question of fact. Ohio HistoricalSociety v. General Maintenance Engineering Co. (1989),65 Ohio App.3d 139. Contract terms are ambiguous where the language is susceptible to two or more reasonable interpretations. U.S.Fidelity Guaranty Co. v. St. Elizabeth Med. Ctr. (1998),129 Ohio App.3d 45. However, where the terms of a contract are clear and unambiguous, a court cannot find a different intent from that expressed in the contract. E.S. Preston Assoc., Inc. v. Preston
(1986), 24 Ohio St.3d 7.
 {¶ 37} In its decision, the trial court found, "[t]he reaffirmation agreement is clear. As stated before, [the reaffirmation agreement] was not a novation, accord and satisfaction, or election of remedies, and is not a release, cancellation or modification of any loan instrument or encumbrance against the [appellants'] collateral."
 {¶ 38} We agree with the trial court's finding that that the language of the reaffirmation agreement clearly and unambiguously states that it is not a novation or accord and satisfaction with respect to the underlying security agreements between appellants and Huntington Bank. The reaffirmation agreement makes several references to the security agreements, but does not affect the terms of those security agreements except for changing the extent of appellants' personal liability. We find that the trial court properly applied the Johnson decision. Although the Chapter 7 discharge and the reaffirmation agreement limit the extent of appellants' personal liability on the indebtedness, neither had any effect on Huntington Bank's ability to enforce its in rem rights in the collateral. Appellants' first and sixth assignments of error are overruled.
 {¶ 39} Assignment of Error No. 2:
 {¶ 40} "The court erred in failing to review deposition testimony and other admissible evidence and in relying upon inadmissible evidence."
 {¶ 41} Appellants argue that the trial court did not thoroughly review all of the evidence. Specifically, appellants maintain that the trial court committed reversible error by failing to review the deposition testimony of its bankruptcy attorney Steve Beathard. Appellants also claim that the trial court improperly considered hearsay testimony.
 {¶ 42} Before ruling on a motion for summary judgment, Civ.R. 56(C) requires a trial court to thoroughly examine all appropriate materials filed by the parties. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 359, 1992-Ohio-95. However, when the party seeking summary judgment demonstrates that no genuine issue of material fact exists, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. Dresher,75 Ohio St.3d at 293. Neither party meets this burden simply by making conclusory assertions that evidence exists to support the claims. Id. To carry this burden, a party must point to specific evidence which affirmatively shows that evidence exists to support the claims. Id.
 {¶ 43} In its opinion, the trial court stated, "[t]he Court did not review the depositions of parties and witnesses that may have been filed with the Clerk of Courts. * * * Nevertheless, neither party has directed the Court's attention to any material facts exposed in depositions not addressed in the filings made for or against summary judgment."
 {¶ 44} Appellants have yet to explain how Beathard's testimony creates a genuine issue of material fact in regard to the areas in which Huntington Bank sought summary judgment. Further, appellants fail to point out which of the trial court's rulings was erroneously based on Beathard's testimony. Appellants' conclusory allegations as they relate to Beathard's testimony are insufficient to show that issues of material fact preclude summary judgment.
 {¶ 45} Appellants also maintain that the trial court impermissibly relied on hearsay evidence in granting summary judgment in Huntington Bank's favor. Again, appellants make conclusory allegations without providing a specific basis for their claim. Further, appellants have failed to comply with Loc.R. 11(B)(3), which provides: "the argument portion of the brief shall include citations to the portion of the record before the court on appeal wherein the lower court committed the error complained of."
 {¶ 46} Appellants have failed to provide specific evidence that creates a genuine issue of material fact with respect to the areas in which the trial court granted summary judgment. Further, appellants have not shown that the trial court relied on inadmissible evidence. Appellants' second assignment of error is overruled.
 {¶ 47} Assignment of Error No. 3:
 {¶ 48} "The judge usurped the jury's role as fact finder."
 {¶ 49} Assignment of Error No. 7:
 {¶ 50} "The trial court erred as a matter of law in determining that appellant's possessed 802 items of property valued at $114,914.15."
 {¶ 51} Appellants argue that the trial court impermissibly made findings of fact in granting summary judgment to Huntington Bank with respect to several issues, including the number of items of personal property in which Huntington Bank held a secured interest and the value of those items.
 {¶ 52} After reviewing the record, we find no evidence offered by appellants to rebut Huntington Bank's assertion that its security interest extended to 802 items of personal property that appellants owned before they filed for Chapter 7 protection. Further, we find that the amount the trial court attributed to those items of property was based on the proofs of loss appellants submitted to Central Mutual. The trial court did not independently determine the value of these items of property, but used appellants' valuation of property, and the court only included property that appellants claimed to have owned prior to filing for Chapter 7 protection. Because appellants have failed to provide evidence to the contrary, there were no disputed issues of fact with respect to either the number of items subject to Huntington Bank's security interest or the value of those items. Appellants' third and seventh assignments of error are overruled.
 {¶ 53} Assignment of Error No. 4:
 {¶ 54} "The trial court failed to acknowledge the effect of bankruptcy on appellee's secured interest."
 {¶ 55} Appellants argue that the trial court improperly found that Huntington Bank's security interest extended to property appellants acquired after they filed for Chapter 7 protection. However, the record indicates otherwise.
 {¶ 56} In its decision, the trial court stated:
 {¶ 57} "[Huntington Bank] makes no claim whatsoever for any personal property acquired by [appellants] after they filed their Chapter 7 petition nor derivative insurance proceeds. But it does assert the right to all insurance proceeds up to the value of the property in which they had a secured interest reflected in the Property Proofs of Loss. Huntington simply seeks satisfaction in rem from its secured property in addition to what it was entitled under the Reaffirmation agreement."
 {¶ 58} We find, as the trial court correctly noted, that Huntington Bank's security interest does not extend to property acquired after appellants filed for Chapter 7 protection, nor does its interest include any insurance proceeds from that property. The trial court clearly excluded this property in determining the extent of Huntington Bank's security interest. Appellants' fourth assignment of error is overruled.
 {¶ 59} Assignment of Error No. 5:
 {¶ 60} "The trial court improperly ruled on matters barred by the bankruptcy."
 {¶ 61} Appellants claim that Huntington Bank is barred from objecting to the claims dischargeable in bankruptcy. The essence of appellants' argument is that bankruptcy law prevents Huntington Bank from enforcing its claim against appellants, because their personal liability has been discharged in bankruptcy.
 {¶ 62} As we previously found, neither the reaffirmation agreement, nor appellants' Chapter 7 discharge eliminated Huntington Bank's in rem rights in the collateral. Appellants' personal liability on debts not reaffirmed was discharged in bankruptcy. However, the effect of the reaffirmation agreement was only to limit appellants' personal liability for the debt owed to Huntington Bank, and did not eliminate Huntington Bank's in rem interest in the collateral or insurance proceeds from that collateral. Based on the language of the reaffirmation agreement and the underlying security interests, Huntington Bank's security interest extends to insurance proceeds.
 {¶ 63} In its decision, the trial court found that Huntington Bank has the right to claim an interest in collateral valued at $114,914.15. However, the court held that Huntington Bank is not entitled to an interest in the insurance proceeds in an amount that exceeds the amount of appellants' indebtedness to Huntington Bank as of the date appellants filed for Chapter 7 protection, which was $82,757.16.
 {¶ 64} We agree with the trial court's decision to grant summary judgment, and hold that Huntington Bank's security interest extends to the insurance proceeds in the amount of $82,757.16 less all payments appellants made pursuant to the reaffirmation agreement in satisfaction of their personal liability for the indebtedness. Huntington Bank is entitled to recover the balance of the debt by nature of its in rem interest in the insurance proceeds. Appellants' fifth assignment of error is overruled.
Judgment affirmed.
Young, P.J., and Powell, J., concur.
[1] Redemption requires the debtor to pay the creditor the amount of the allowed secured claim, which is the lesser of the unpaid balance of the claim or the value of the collateral. See Sections 722 and 506(a), Title 11, U.S.Code.